**Opinion issued September 3, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00498-CV

————————————

**THE HONORABLE GEORGE E. RISNER, Appellant**

**V.**

**HARRIS COUNTY REPUBLICAN PARTY, PAUL SIMPSON, CHAIR, AND LEONILA SALAZAR, Appellees**

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2014-02621

# O P I N I O N

In this election-code dispute, we consider whether the trial court abused its discretion when it denied appellant George E. Risner's petition for a permanent injunction to enjoin appellee the Harris County Republican Party and its then-

chair, Jared Woodfill,[1] from certifying appellee Leonila Salazar's name for a place on the primary election ballot and the November general election ballot for the position of Justice of the Peace, Precinct 2, Place 2 in Harris County.  We reverse.

**Background**

This case involves an election code dispute regarding the position of Justice of the Peace, Precinct 2, Place 2, in Harris County, Texas.  Risner was the sole candidate for the position in the Democratic Party primary and received a majority of the votes cast in the Democratic Party Primary Election held on March 4, 2014.  Salazar was the sole candidate for the position in the Republican Party primary and received a majority of the votes cast in the Republican Party Primary Election held on March 4, 2014.  Absent judicial intervention, Risner and Salazar will face each other in the general election in November 2014.

Prior to the primary election, Salazar hired Colonnade Marketing, by and through Fred Blanton, as a consultant for her campaign.  In early November 2013, Blanton recommended to Salazar that they hire a third party to collect petition signatures for her application for a position on the Republican Party Primary Ballot.  Blanton and Salazar met with Ralph Garcia, whom they hired to collect the signatures.  At the meeting, Blanton explained the requirements for collecting

---

[1]     Jared Woodfill was the chair of the Harris County Republican Party in December 2013.  Paul Simpson has since replaced Jared Woodfill as the chair of the Harris County Republican Party and has been substituted for Jared Woodfill as an appellee in this case.

2

petition signatures to Garcia. Also at that meeting, Garcia informed Blanton that there were other individuals who would be assisting Garcia in obtaining the signatures. Salazar and Blanton hired Garcia to obtain 1,000 signatures.

On December 3, 2013, Garcia provided 38 petition pages with a total of 365 petition signatures to Blanton. These pages were not signed by the petitions' circulators, Ralph Garcia, Iris Irigoyen, Annette Irigoyen, and David Basurto. Two days later, Garcia provided an additional four pages, each of which contained 10 petition signatures and the notarized signature of one of the circulators. The circulators swore to these additional pages before a notary public on December 5, 2013. Upon receiving the additional pages, Blanton placed the page signed by each circulator with the related pages from that circulator that had been received on December 3, 2013, placed the circulator's first name on each page, and added appropriate page numbering for each circulator's bundle of petition pages.

On December 6, 2013, Salazar met Blanton at the Harris County Republican Party's headquarters. Salazar added seven pages containing 52 petition signatures to the 42 pages supplied by Garcia. Salazar then submitted her application and the 49 pages of petition signatures, containing 457 total signatures, together with the appropriate filing fee, to appellee Harris County Republican Party ("HCRP") and Jared Woodfill. At the time she submitted her application and petition, Salazar was unaware of Blanton's actions on December 3, 2013 or December 5, 2013.

Salazar's application and petition were timely filed three days before the filing deadline of 6:00 p.m. on December 9, 2013. Jared Woodfill, then-chair of the HCRP, reviewed Salazar's application and petition and, finding no facial defects in the paperwork, certified Salazar for the primary ballot on December 13, 2013.

On December 19, 2013, counsel for Risner sent a letter to Salazar, which was copied to the HCRP, informing Salazar that there might be a problem with her application and petition. The letter contained no evidence and did not request any action to be taken.

On January 21, 2014, Risner filed an "Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunctions." In his petition, Risner sought to enjoin the HCRP and its chair from certifying Salazar's name for inclusion on both the "Republican primary ballot" and "the general election ballot as the Republican nominee for Harris County Justice of the Peace, Precinct 2, Place 2." Risner filed his petition against the HCRP and Jared Woodfill, as chair of the HCRP. Salazar intervened in the lawsuit on February 4, 2014.

The HCRP and Woodfill filed their "Original Answer" to the petition on February 17, 2014, asserting a general denial to the allegations and arguing that the

4

petition would become moot on February 18, 2014, that Risner lacked standing, and that laches prohibited Risner's suit.

In-person early voting began on February 18, 2014. The primary elections took place on March 4, 2014. Salazar was uncontested on the Harris County Republican Primary ballot for Justice of the Peace, Precinct 2, Place 2 and received a majority of the votes cast in the election. Risner was uncontested on the Harris County Democratic Primary ballot for Justice of the Peace, Precinct 2, Place 2 and received a majority of the votes cast in the election.

The trial court conducted an oral hearing on Risner's request for a temporary injunction on April 14 and 15, 2014. At the hearing, Risner called an expert in handwriting analysis, who provided uncontroverted testimony that 305 of the 457 petition signatures submitted by Salazar were forged. Further, Risner submitted four affidavits, one from each circulator, stating that they did not obtain or witness any of the signatures on 39 of the petition pages submitted with Salazar's application.

On April 23, 2014, the trial court issued an "Order on Temporary Injunction." In the order, the trial court found that it had subject matter jurisdiction over the case and that Risner was entitled to temporary injunctive relief. The trial court further found, however, that Salazar was entitled to an opportunity to cure her application and petition.

As part of its order, the trial court issued findings of fact and conclusions of law. Included in the findings, the trial court found that Salazar's application contained no facial defects within the four corners of the application; that the HCRP and Woodfill found no facial defects in the application; that the HCRP and Woodfill relied on the affidavits of each of the circulators and treated the petition pages as satisfying the requirement that Salazar provide no less than 250 valid signatures in support of her application; that Salazar was first notified of a potential irregularity in her application on December 21, 2013, when she received the letter from Risner's attorney; that the HCRP and Woodfill were first notified of potential irregularities in Salazar's application no sooner than December 20, 2013, when they received the letter from Risner's attorney; that neither Salazar nor the HCRP and Woodfill had any notice of any irregularities in her application prior to the December 9, 2013 deadline to certify her application; that Risner's expert's testimony that 305 of the 457 signatures were forgeries was uncontested; and that the circulators that Salazar and Blanton hired failed to obtain or witness the signatures on 39 of the petition pages submitted with Salazar's application.

Based on its findings, the trial court concluded that Salazar was eligible to hold the office; that neither Salazar nor Blanton participated in any criminal or unethical behavior; that neither the HCRP nor Woodfill engaged or participated in criminal or unethical behavior; that Salazar's application page met all of the

6

requirements of the Election Code and was valid; that the petition pages supporting Salazar's application that were supported by her own affidavit met all of the requirements of the Election Code, and HCRP's and Woodfill's acceptance of these pages was proper; that, without resort to extrinsic evidence, the remaining petition pages were facially valid and met all requirements of the Election Code and HCRP's and Woodfill's acceptance of the petition pages was proper; that the circulator affidavits signed by Ralph Garcia, Iris Irigoyen, Annette Irigoyen, and David Basurto contained sworn statements of fact which were not true, and, as a result, the petition pages supported by these circulators' affidavits did not meet the Election Code requirements; and that the signatures on the petition pages supported by the circulators' affidavits, other than Salazar's, were not in the handwriting of the purported signatories.

The trial court further concluded that certification of Salazar's name for a position on the ballot "would violate or threaten a violation of the Election Code, causing harm or the danger of harm to Plaintiff Risner." The trial court therefore granted a temporary injunction, prohibiting the HCRP and Woodfill from certifying Salazar's name for inclusion on the general election ballot in November.

Finally, the trial court granted Salazar's request for an opportunity to cure the defects in her application, allowing Salazar to seek new signatures from eligible voters by no later than May 5, 2014. The trial court further granted leave

to HCRP and Woodfill to either accept or reject the new signatures by no later than May 10, 2014.

Salazar submitted new petition pages on May 5, 2014, which the HCRP and Woodfill accepted on May 10, 2014. The new petition pages contained 502 signatures.

The trial court held a hearing on Risner's request for a permanent injunction on June 3, 2014. At the hearing, the HCRP offered the amended petition pages for admission, and the trial court admitted the petition pages over Risner's objection. Four of the signatures were from voters who had voted in the Democratic Party's primary, and 33 of the signatures were from voters who did not live in the precinct. Accordingly, the new pages contained 465 valid signatures.

On June 11, 2014, the trial court signed a final judgment, denying Risner's request for a permanent injunction and granting Salazar's claim for an opportunity to cure her defective application. The trial court further ordered the HCRP and Jared Woodfill or his successor to certify Salazar's name for the office of Harris County Justice of the Peace, Precinct 2, Place 2.

On June 20, 2014, Risner appealed from the trial court's judgment. On July 2, 2014, the HCRP and Woodfill filed a notice of appeal. Salazar also filed a notice of appeal on July 2, 2014.

## The Parties' Arguments

Risner filed his appellant's brief on July 28, 2014. In his brief, Risner argues that the trial court abused its discretion when it denied his request for a permanent injunction, because (1) the Election Code was amended in 2011 to prohibit a candidate from amending an application for a place on the ballot; (2) even if a right to cure defects in an application still exists, there has never been an equitable right to cure a defect, such as fraud, that is not apparent from the face of the application; and (3) Salazar's original application, without the amended petition pages, contains an insufficient number of valid signatures, so that Salazar does not meet the statutory requirements for a place on the ballot. Risner seeks a permanent injunction enjoining the HCRP and Paul Simpson, the current chair of the HCRP, from certifying Salazar's name for inclusion on the general election ballot.

HCRP and Paul Simpson filed an "appellees' brief" on August 7, 2014 and an "appellants' brief" on August 8, 2014. HCRP and Simpson argue that the trial court did not abuse its discretion when it denied Risner's request for a permanent injunction. According to HCRP and Simpson, Salazar's original application "was free from any facial defects" and contained the requisite number of signatures, so it satisfied the Election Code requirements; they further contend that "Salazar's cure efforts overcame all extrinsic defects and entitled her to be on the ballot." Second,

9

the trial court's denial of injunctive relief is supported by laches, because "Risner did not file suit until January 21," "Risner's delays were sufficient alone to deny his petition," and "equitable relief is not available at this late date in the election process." Third, the Texas Election Code requires a primary candidate who wins the nomination to be certified for the general election ballot, and it does not allow for decertification of an elected primary candidate except for candidates later found to be ineligible. Fourth, the trial court lacked subject matter jurisdiction over this case because Risner's challenge was required to be concluded by February 17, 2014, the day before in-person early voting began and, for the same reason, this case is now moot. Fifth, nothing in the Election Code mandates exclusion from the ballot as a remedy when a curable defect is discovered, and the legislative amendment prohibiting amendment of applications after the filing deadline does not prohibit courts from permitting a candidate to cure a defective application. Finally, the truthfulness of a circulator's affidavit should not be subject to challenge in a civil proceeding, but should strictly be limited to criminal proceedings.

Finally, Salazar filed a brief on August 7, 2014 and a "Cross-Appeal Brief" on August 8, 2014. In her briefs, Salazar contends that the trial court did not abuse its discretion in denying Risner's request for a permanent injunction. Salazar contends that Risner either waived his complaint or is barred by laches from

10

seeking relief, because he did not obtain any relief prior to February 17, 2014. Salazar further contends that Risner's complaint is now moot, because the Republican Party Primary Election has already occurred. Salazar also argues that Risner waived his complaint by failing to object to Salazar's amended petition pages by May 16, 2014, the deadline set by the trial court. Finally, Salazar contends that section 172.021(e) of the Texas Election Code is unconstitutional.

## Applicable Principles of Election Law

To be entitled to a place on a primary election ballot, a candidate must make an application for a place on the ballot. TEX. ELEC. CODE ANN. § 172.021(a) (West Supp. 2014). A candidate for justice of the peace in a county with a population of more than 1,500,000 must, in addition to filing an application, file either a petition with a minimum of 500 signatures or a petition with a minimum of 250 signatures and a filing fee. *Id.* § 172.021(e).

A candidate's application must be in writing, be signed and sworn to by the candidate, and be timely filed. *Id.* § 141.031(a)(1)–(3) (West Supp. 2014). When an application is accompanied by a petition, "the petition is considered part of the application." *Id.* § 141.032(c) (West Supp. 2014).

A petition, to be valid, must be timely filed and contain the requisite number of valid signatures. *Id.* § 141.062(a)(1)–(2) (West Supp. 2014). For a signature to be valid, the signer must be a registered voter of the appropriate territory or have

11

been issued a registration certificate for a registration that will become effective before the applicable election; the petition must include the signer's address and date of birth or voter registration number; the petition must contain a circulator's affidavit; the page of the petition on which the signature is entered must contain each statement required to appear on the petition; and the signature must be in the signer's handwriting. *Id.* § 141.063(a), (b) (West 2010). Finally, each part of a petition must contain an affidavit by the petition's circulator, stating that the circulator (1) pointed out and read to each signer each statement pertaining to the signer that appears on the petition, (2) witnessed each signature, (3) verified each signer's registration status, and (4) believes each signature is genuine. *Id.* § 141.065(a) (West 2010).

The candidate's application to be on the ballot for the position of justice of the peace must be filed with the county chair or the secretary of the county executive committee for the candidate's political party. *Id.* § 172.022(a) (West Supp. 2014). In 2013, the filing deadline was at 6:00 p.m. on Monday, December 9. *See id.* § 172.023(a) (West Supp. 2014). After the filing deadline, a candidate may not file, and the county chair may not accept, an amended application or an amendment to an application. *Id.* § 141.032(g).

Upon receiving an application, the county chair must review the application "to determine whether it complies with the requirements as to form, content, and

12

procedure." *Id.* § 141.032(a). When an application is accompanied by a petition, the chair must review the application "as soon as practicable after the date the application is received." *Id.* § 141.032(c).

If an application does not comply with the applicable requirements, the chair must reject the application and immediately notify the candidate of the reason for the rejection. *Id.* § 141.032(e). If an application complies with the requirements, the county chair must accept the application and submit the candidate's name and other information to the secretary of state. *Id.* § 172.029(a) (West Supp. 2014); *cf. id.* § 172.028(a).

A determination that an application complies with the applicable requirements does not preclude a subsequent determination that the application does not comply. *Id.* § 141.032(d). If the county chair accepts an application and later determines that a candidate's application does not comply with the applicable requirements, the chair must notify the secretary of state. *Id.* § 172.029(d).

Nevertheless, "[a]n application for a place on the ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure after the day before the beginning of early voting by personal appearance for the election for which the application is made." *Id.* § 141.034(a) (West 2010).

In 2014, the first day for early voting by personal appearance was February 18, 2014. *See id.* § 41.007(a) (West Supp. 2014), § 85.001(a), (c) (West 2010). The primary election was March 4, 2014. *See id.* § 41.007(a).

After the primary election, the "county chair shall certify in writing for placement on the general election ballot the name and address of each primary candidate who is nominated for a county or precinct office." *Id.* § 172.117(a) (West 2010).

Finally, "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." *Id.* § 273.081 (West 2010).

**Jurisdiction**

As an initial matter, we consider our jurisdiction over this appeal. In their third through fifth issues, HCRP and Simpson argue that this case is moot, because the Election Code does not permit the relief Risner seeks, any challenge to a candidate's application must be concluded before the first day of early voting by personal appearance, and the Republican Party Primary Election has already occurred. Similarly, Salazar, as part of her first issue, contends that this case is moot because the primary election has already occurred. "Appellate courts are

14

prohibited from deciding moot controversies." *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999).

*Salazar's Election in the Primary Did Not Render This Case Moot*

The Texas Election Code states that an application for a place on the ballot cannot be challenged "after the day before the beginning of early voting by personal appearance for the election for which the application is made." Tex. Elec. Code Ann. § 141.034(a). Risner's challenge was initiated on January 21, 2014—26 days before the deadline to challenge Salazar's application. The trial court, however, did not rule on the application for temporary injunction until April 23, 2014 and it did not rule on the request for a permanent injunction until June 11, 2014.

Both candidates were unopposed in the primary elections, and, absent injunctive relief, they will face each other in the November general election. Further, the only limitation on a court's authority to grant injunctive relief is the election schedule itself. *See In re Gamble*, 71 S.W.3d 313, 318 (Tex. 2002) (orig. proceeding); *Sachtleben v. Bennett*, No. 14-10-00322-CV, 2010 WL 3168395, at *2 (Tex. App.—Houston [14th Dist.] Aug. 12, 2010, no pet.) (mem. op.). Because Salazar was unopposed in the primary election, issuance of an injunction at this point would have no effect on the primary election. Nor would issuance of an injunction at this point interfere with the November general election. *See*

*Sachtleben*, 2010 WL 3168395, at \*2; *Triantaphyllis v. Gamble*, 93 S.W.3d 398, 406, 407 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Accordingly, we conclude that this matter is not moot. *See In re Angelini*, 186 S.W.3d 558, 561 (Tex. 2006) (orig. proceeding) ("As both Angelini and Bustamante are unopposed in their respective primaries, there should be ample time before the general election in November for a trial court to make its findings, and for any appellate review to be conducted first in the court of appeals rather than this Court."); *Fitch v. Fourteenth Court of Appeals*, 834 S.W.2d 335, 337 (Tex. 1992) (orig. proceeding); *Sachtleben*, 2010 WL 3168395, at \*2; *Triantaphyllis*, 93 S.W.3d at 406, 407.

*The Election Code Authorizes Relief*

The Texas Election Code requires a county chair to "certify in writing for placement on the general election ballot the name and address of each primary candidate who is nominated for a county or precinct office." TEX. ELEC. CODE ANN. § 172.117(a). There is one exception to this requirement: "A candidate's name may not be certified if, before delivering the certification, the county chair learns that the name is to be omitted from the ballot" because "the candidate withdraws, dies, or is declared ineligible." *Id.* §§ 145.035, 172.117(c).

Nevertheless, the Texas Election Code also states that a "person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from

16

continuing or occurring." *Id.* § 273.081. And, as discussed above, the determination of a challenge to a candidate's application may be made after the primary election, so long as the determination does not interfere with the election schedule and the challenge was initiated prior to the statutory deadline for bringing such a challenge. *See id.* § 141.034(a); *In re Gamble*, 71 S.W.3d at 318; *Fitch*, 834 S.W.2d at 337; *Sachtleben*, 2010 WL 3168395, at *2; *Triantaphyllis*, 93 S.W.3d at 406, 407.

Here, Salazar has been elected as the Republican nominee for the position of Harris County Justice of the Peace, Precinct 2, Place 2. Ordinarily, the election result would require the Chair of the Harris County Republican Party to certify her name for inclusion on the general election ballot. Nevertheless, Salazar was unopposed in the primary election and Risner initiated a challenge to her application before February 17, 2014. As a result, section 273.081 of the Texas Election Code authorizes injunctive relief to be granted on Risner's behalf, if Salazar's application is in violation of the election code. TEX. ELEC. CODE ANN. § 273.081.

*Risner Has Standing*

In their brief, HCRP and Simpson include a section styled "Risner lacks standing to pursue challenge to application." Although HCRP and Simpson do not present any argument in their brief related to standing, standing is implicit in the

concept of subject matter jurisdiction, and we will address the issue. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–46 (Tex. 1993).

"A plaintiff has *standing* when it is personally aggrieved . . . ." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). The general test for standing requires a real controversy between the parties that will actually be determined by the judicial declaration sought. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)).

Here, Risner, at the time he filed the petition in the trial court, was the sole candidate for the Democratic party's nominee for the position of Harris County Justice of the Peace, Precinct 2, Place 2. Salazar was the sole candidate to become the Republican nominee for the same position. Risner therefore had an interest in not being opposed by a candidate whose application and petition did not qualify her for a position on the ballot. *See In re Jones*, 978 S.W.2d 648, 651 (Tex. App.—Amarillo 1998, orig. proceeding) (holding candidate for office has interest in not being opposed by ineligible candidate). Accordingly, Risner had standing to challenge Salazar's application. *See Fitch*, 834 S.W.2d at 337–38 (considering challenge by sole candidate in Republican Party primary to sole candidate for Democratic Party primary's application); *Sachtleben*, 2010 WL 3168395, at *2 (same); *Triantaphyllis*, 93 S.W.3d at 406, 407 (considering appeal by sole

18

candidate in Democratic Party primary in case involving rejection of Republican candidate's application for position on primary ballot).

**Is the Election Code Unconstitutional?**

In her sole issue in her "Cross-Appeal Brief," Salazar argues that section 172.021(e) of the Texas Election Code is an unconstitutional violation of her right to equal protection under Article I, section 3 of the Texas Constitution.

To decide a constitutional challenge to an election statute, we must consider the character and magnitude of the asserted injury to the rights protected by the constitution, identify and evaluate the State's interests for the burden imposed, and determine the legitimacy and strength of those interests and whether those interests necessitate the burden on a party's rights. *See Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570 (1983). Further, in an equal protection challenge, a statutory classification is evaluated with strict scrutiny if it interferes with a fundamental right or discriminates against a suspect class. *See Walker v. State*, 222 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). But if the classification does not interfere with a fundamental right or discriminate against a suspect class, it need only be rationally related to a legitimate governmental purpose to survive an equal protection challenge. *Id.*

Candidacy for an elected position is not a fundamental right, and the requirement that a candidate for the office of justice of the peace in a county with a

19

population of more than 1.5 million obtain 250 signatures to be entitled to a place on the general primary election ballot does not impose a significant burden on a person's right to run for office. *See Celebrezze*, 460 U.S. at 788–89, 103 S. Ct. at 1570; *State v. Hodges*, 92 S.W.3d 489, 498 (Tex. 2002) (holding candidacy is not fundamental right). Nor does such a requirement interfere with a fundamental right or discriminate against a subject class, as it applies equally to all persons, regardless of political party, in counties with populations greater than 1.5 million. *See Walker*, 222 S.W.3d at 711. And, because "[t]he State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates," the statute is rationally related to a legitimate state interest in preventing or discouraging an unqualified or frivolous candidate from obtaining a place on the ballot. *Celebrezze*, 460 U.S. at 788 & n.9, 103 S. Ct. at 1570 & n.9; *see also Walker*, 222 S.W.3d at 711.

Accordingly, we overrule Salazar's constitutional challenge to Texas Election Code section 172.021(e). *See Celebrezze*, 460 U.S. at 789, 103 S. Ct. at 1570.

**Did the Trial Court Abuse Its Discretion?**

In his appellate brief, Risner argues that the trial court abused its discretion by granting Salazar an opportunity to cure her defective petition and by denying his request for a permanent injunction, because there is no right to cure a defect in an application that is not apparent from the face of the application and because the Election Code prohibits a candidate from amending her petition. In response, HCRP and Simpson contend that the trial court did not abuse its discretion, because (1) the original application satisfied the requirements of the election code, (2) the trial court had authority to provide Salazar an opportunity to cure her application, which she did, and (3) the trial court's judgment is supported by laches. In her response, Salazar contends that Risner waived his complaint by failing to timely obtain a ruling, that the trial court's judgment is supported by laches, and that Risner waived his complaint to the trial court's order granting Salazar an opportunity to cure.

*Standard of Review*

Permanent injunctive relief may be granted upon a showing of (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *See Triantaphyllis*, 93 S.W.3d at 401; *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet.

denied). Further, a court determining the appropriateness of a permanent injunction should balance the competing equities, including the public interest. *See In re Gamble*, 71 S.W.3d at 317; *Triantaphyllis*, 93 S.W.3d at 401–02.

In an appeal from the denial of a permanent injunction, we apply an abuse of discretion standard. *See Fort Bend Cnty. Wrecker Ass'n v. Wright*, 39 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2001, no pet.). "A trial court abuses its discretion by (1) acting arbitrarily and unreasonably, without reference to guiding rules or principles, or (2) misapplying the law to the established facts of the case." *Triantaphyllis*, 93 S.W.3d at 402 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). But "where the facts conclusively show that a party is violating the substantive law, the trial court should enjoin the violation, and in such case, there is no discretion to be exercised." *Terramar Beach Cmty. Ass'n*, 25 S.W.3d at 848.

Finally, "[w]e review de novo the trial court's conclusions of law." *Sachtleben*, 2010 WL 3168395, at \*3 (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

*Risner Did Not Waive His Complaint And Is Not Barred By Laches*

Laches is an equitable remedy that bars a plaintiff from asserting a claim due to a lapse of time. *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 912 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

22

The party asserting laches must prove two essential elements for laches to bar a claim: (1) a party's unreasonable delay in asserting a legal or equitable right; and (2) a good faith and detrimental change of position by another because of the delay. *Green v. Parrack*, 974 S.W.2d 200, 203–04 (Tex. App.—San Antonio 1998, no pet.).

Here, Salazar filed her application on December 6, 2013. Risner brought his petition for temporary and permanent injunction on January 21, 2014. The deadline for challenging Salazar's application was February 17, 2014. *See* TEX. ELEC. CODE ANN. §§ 41.007(a), 85.001(a), (c), 141.034(a).

Although it may have been possible for Risner to bring his petition sooner, "he needed a certain amount of time to ascertain the validity of [the] signatures" and otherwise investigate his case and marshal his evidence. *Atkinson v. Carter*, 785 S.W.2d 449, 452 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding), *overruled on other grounds sub nom. Carter v. Fourteenth Court of Appeals*, 789 S.W.2d 260 (Tex. 1990) (orig. proceeding). Moreover, HCRP and Woodfill did not file an answer or otherwise raise laches until February 17, 2014—the day they contend Risner was required to have *concluded* his challenge to Salazar's petition.

Under these circumstances and given that "gathering evidence takes time," we cannot conclude that HCRP and Simpson have met their burden of showing that Risner unreasonably delayed the filing of his petition for an injunction. *Id.*

23

("It would be inappropriate to close the courthouse doors simply because gathering evidence takes time. There is virtually no authority for refusing to enforce the Election Code because of laches . . . .").

*Salazar's Application Contained Insufficient Valid Signatures*

A candidate for a place on a primary election ballot for the position of justice of the peace in Harris County must submit a valid application and either a filing fee and a petition containing 250 valid signatures or a petition containing 500 valid signatures. *See* TEX. ELEC. CODE ANN. § 172.021.

Here, Salazar filed her application on December 6, 2013, three days before the December 9, 2013 deadline. *See id.* § 172.023(a). Salazar filed an application, a filing fee, and petition pages containing 457 signatures.

At the conclusion of the temporary injunction hearing, the trial court found that the uncontroverted testimony showed that 305 of the 457 signatures submitted by Salazar were fraudulent and that 39 of the petition pages submitted with Salazar's application were not valid. *See id.* §§ 141.063, 141.065. Without the invalid signatures, Salazar's petition contained less than the requisite 250 signatures necessary to obtain a place on the primary election ballot. The trial court concluded that Salazar's petition did not satisfy the requirements of the Election Code and granted Risner's request for a temporary injunction, enjoining

the HCRP and its chair from certifying Salazar's name for the November general election ballot.

Nevertheless, HCRP and Simpson contend that we "may properly deny Risner's injunctive requests because Salazar's petitions were sufficient." HCRP and Simpson argue that Salazar's original application and petition were free from any facial defects and facially satisfied all requirements of the election code. HCRP and Simpson further argue that Salazar's application was accompanied by circulators' affidavits, which also were in facial compliance with the statutes. HCRP and Simpson therefore conclude that the petitions were sufficient.

HCRP and Simpson also present a related argument, in which they contend that the truthfulness of a circulator's affidavit is strictly a criminal matter and should not be subject to challenge in a civil injunction proceeding.

Contrary to HCRP and Simpson's arguments, section 141.034 of the Texas Election Code specifically encompasses a challenge to the contents, as opposed to the form and procedure, of a candidate's application. *Id.* § 141.034. Because adoption of HCRP and Simpson's construction—wherein neither the party chair nor a court could consider the veracity of the application, the accompanying petition, or any of the included affidavits—would render the provision permitting challenges to the contents of an application meaningless, we do not adopt that construction. *See City of Hous. v. Woolley*, 51 S.W.3d 850, 853 (Tex. App.—

25

Houston [1st Dist.] 2001, no pet.) ("We also should not adopt a construction that would render a law or provision absurd or meaningless.").

Further, we must construe the Election Code in light of the objectives sought to be attained by the code, and "one of the principal purposes behind the Election Code [is] the prevention of election fraud." *In re Bell*, 91 S.W.3d 784, 787 (Tex. 2002) (orig. proceeding); *see also* TEX. GOV'T CODE ANN. §§ 311.021, 311.023 (West 2013); TEX. ELEC. CODE ANN. § 1.003(a) (West 2010); *Woolley*, 51 S.W.3d at 853 ("Our objective in construing a statute is to determine and give effect to the intent of the lawmaking body.").

Accordingly, we conclude that a challenge to a candidate's application may result in a review of the truthfulness of the application's contents. Based on the trial court's findings that the circulator's affidavits contained false statements, that the petition pages contained fraudulent signatures, and that there were less than 250 valid signatures filed with Salazar's application, Salazar's application was deficient when it was filed and on the December 9, 2013 filing date. *See* TEX. ELEC. CODE ANN. §§ 141.032(c), (e), 141.062(a), 141.063(a), 141.065, 172.023(a), 172.029(d).

*Salazar Was Not Entitled To An Opportunity To Cure*

Although the trial court found that Salazar's original application and petition contained an insufficient number of valid signatures and granted a temporary

26

injunction, the trial court further found that Salazar's application contained no facial defects, that neither Salazar nor the HCRP nor its chair had any knowledge of any issues with Salazar's application, and that neither Salazar nor the HCRP nor its chair engaged in any fraud or misconduct or knowing violation of law. The trial court also concluded, as a matter of law, that section 141.032(g) of the Election Code did not preclude the trial court from granting equitable relief to Salazar. The trial court therefore abated the case and afforded Salazar an opportunity to cure her defective application.

In his brief, Risner argues that the trial court abused its discretion by granting Salazar an opportunity to cure her petition.

*The Election Code Prohibits Amendments to Petitions After the Filing Deadline*

Prior to 2011, the Texas Election Code neither specifically authorized nor specifically prohibited amendments to applications for positions on a ballot after the filing deadline for such applications. Instead, the Code merely required that a candidate's application "be timely filed with the appropriate authority." TEX. ELEC. CODE ANN. § 141.031(a)(3). The Code further required a party chair to review the application within either five days or "as soon as practicable," to reject any non-compliant application, and to immediately notify the candidate of the reason for the rejection. *Id.* § 141.032(a), (b), (c), (e).

27

In *In re Gamble*, *In re Francis*, and *In re Holcomb*, the Texas Supreme Court construed the aforementioned statutory provisions, in conjunction with the statutory authorization in Texas Election Code section 273.081 to grant equitable relief to persons being harmed by violations of the code, to authorize courts to grant equitable relief and to allow a candidate whose application contained facial defects to cure his or her defective application after the filing deadline when the party chair failed to fulfill his or her statutory obligation to timely review the application and notify the candidate of the defects. *See In re Holcomb*, 186 S.W.3d 553, 555 (Tex. 2006) (orig. proceeding); *In re Francis*, 186 S.W.3d 534, 541–43 (Tex. 2006) (orig. proceeding); *In re Gamble*, 71 S.W.3d at 317–19. The supreme court further stated, however, that such "candidates should have the same opportunity to cure *as they would have had before the deadline passed*." *In re Holcomb*, 186 S.W.3d at 555 (emphasis added); *see In re Francis*, 186 S.W.3d at 541, 542 ("Candidates should have the same opportunity to cure as a proper review before the filing deadline would have allowed them"; stating that code allows "party chairs to focus on *facial defects* and call for correction *before the filing deadline*" [emphases added]); *In re Gamble*, 71 S.W.3d at 318 ("There would be no purpose to the duty to notify the prospective candidate of defects in his or her application if the intent was not to allow an opportunity to cure those defects, particularly if the defects can be corrected before the filing deadline"; "under

28

limited circumstances, statutory deadlines may be extended to correct an official's violation of a statutory duty"; and denying relief because "[t]here was no court decision entitling Judge Gamble to amend his application after the statutory deadline"). Consequently, the Election "Code and well-established Texas law" did not, in the absence of a court order, "permit[] a party officer to allow a candidate who filed a defective application before the filing deadline to amend his application after the deadline so the party chair can place the candidate on the ballot." *In re Gamble*, 71 S.W.3d at 319 (Baker, J., concurring).

In 2011, however, the legislature amended section 141.032 of the Election Code by adding Subsection (g), to state that "a candidate may not amend an application filed under Section 141.031" and "the authority with whom the application is filed may not accept an amendment to an application filed under Section 141.031" after the filing deadline. *See* Act of May 19, 2011, 82d Leg., R.S., ch. 254, § 1, 2011 Tex. Gen. Laws 834, 834 (codified at TEX. ELEC. CODE ANN. § 141.032(g)).

When construing a statute, our ultimate goal is to effectuate legislative intent. *See Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). Under the plain meaning rule, we begin with the text of the statute, and we must determine the legislature's intent from the plain meaning of the words chosen "unless there is an

29

obvious error such as a typographical one that resulted in the omission of a word or application of the literal language of a legislative enactment would produce an absurd result." *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (internal citations omitted); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013); *Fresh Coat, Inc.*, 318 S.W.3d at 901; *Cornyn v. Universe Life Ins. Co.*, 988 S.W.2d 376, 378–79 (Tex. App.—Austin 1999, pet. denied).

After the 2011 amendments, the express, unambiguous terms of section 141.032(g) of the Election Code prohibit a candidate from amending an application after the filing deadline and prohibit a party chair from accepting such an amendment. *See* TEX. ELEC. CODE ANN. § 141.032(g); TEX. GOV'T CODE ANN. § 311.016(5) (West 2013) ("'May not' imposes a prohibition and is synonymous with 'shall not.'"). The statute does not contain an obvious error, and application of the literal language of the statute does not produce an absurd result. *See Rylander*, 6 S.W.3d at 284. Moreover, in the context of the Election Code, the meaning of the statute is clear: a candidate's application must be timely filed with the appropriate authority by the filing deadline and a candidate may only amend the application during the time period in which the candidate is allowed to file a new petition. *See* TEX. ELEC. CODE ANN. § 141.031(a)(3) (requiring candidate to timely file application), § 141.032(a), (e), (g) (requiring authority with whom application is filed to review application for compliance with procedures, including

timeliness of filing, requiring application not timely filed to be rejected, and prohibiting amendments to application after filing deadline). Therefore, the meaning of the statute—candidates are prohibited from filing, and party chairs are prohibited from accepting, amendments to applications after the filing deadline—is clear, and we may not disregard the express terms of the statute. *See Gonzales v. Guilbot*, 315 S.W.3d 533, 541 (Tex. 2010) ("Our chief aim is to determine and give effect to the Legislature's intent, and where the statutory language is straightforward, it is determinative."); *Rylander*, 6 S.W.3d at 284.

Further, when interpreting an amendment to a statute, we presume that the legislature intends to change the law. *See Adams v. Tex. State Bd. of Chiropractic Exam'rs*, 744 S.W.2d 648, 656 (Tex. App.—Austin 1988, no writ); *Schott v. Leissner*, 659 S.W.2d 752, 754 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). Here, the statute was amended by House Bill 1135. Nothing in the legislative history of the bill contradicts the presumption that the legislature intended to change the law. The analysis of the House Committee Report states that the bill "amends the Election Code to prohibit a candidate for public office from amending an application for a place on the ballot . . . and to prohibit the authority with whom the application or petition is filed from accepting an amendment to the application or petition after the filing deadline." House Committee on Elections, Bill Analysis, Tex. H.B. 1135, 82d Leg., R.S. (2011). In addition, according to the bill analysis

31

of the bill as engrossed, the bill "amends current law relating to an application to run for political office."  Senate Committee on State Affairs, Bill Analysis, Tex. H.B. 1135, 82d Leg., R.S. (2011).  Because we must presume that the legislature was aware of the aforementioned case law, which only allowed a candidate to file an amendment to his or her application for a position on the ballot after the filing deadline if the candidate obtained a court decision entitling the candidate to file such an amendment, we conclude that the legislative history, indicating that the amendment to section 141.032 "amends current law," supports the presumption that the legislature intended to change the existing law.  *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding) ("We presume that the Legislature is aware of relevant case law when it enacts or modifies statutes."); *In re Gamble*, 71 S.W.3d at 319 (denying relief for candidate seeking to remain on ballot because "[t]here was no court decision entitling Judge Gamble to amend his application after the statutory deadline"); *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.").

We conclude that the plain meaning of the statute is unambiguous, that the legislature intended to change the law, and that the legislature enacted subsection 141.032(g) with the intent to prohibit a candidate from filing, and the authority with whom an application is filed from accepting, an amended application for a

32

place on the ballot after the statutory filing deadline. As a result, we construe subsection 141.032(g) to prohibit the trial court from granting a candidate an opportunity to file an amended application and from requiring a party chair to accept an amended application after the filing deadline. *See In re Wilson*, 421 S.W.3d 686, 689 (Tex. App.—Fort Worth 2014, orig. proceeding) (denying petition for writ of mandamus to compel chair of Tarrant County Democratic Party to include candidate's name on ballot and stating that "it appears that the legislature has foreclosed the opportunity to cure any defects in an application or petition discovered after the filing deadline").

Accordingly, the trial court erred when it held, as a matter of law, that Salazar was entitled to an opportunity to cure her defective application after the filing deadline had passed.[2]

*Salazar Was Not Entitled To An Opportunity To Cure Her Application*

Moreover, even if subsection 141.032(g) did not prohibit the filing of an amendment to an application after the filing deadline, Salazar would not be entitled to equitable relief under prior law. The Texas Supreme Court held, before section 141.032 was amended, that equitable relief is available and a candidate might be

---

[2] Because the Election Code makes the petition part of the application, section 141.032(g) prohibits the filing of an amendment to a petition as well as the filing of an amendment to the application page itself. TEX. ELEC. CODE ANN. § 141.032(c), (g) (West Supp. 2014); *see also In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding).

given an opportunity to cure a defective application when (1) the party chair fails to comply with his or her statutory duty to timely review the application, reject the application, and promptly notify the candidate of the reason for the rejection, (2) the defects consist of facial defects, and (3) the candidate could have cured the defects before the filing deadline if the party chair had complied with his or her statutory duties. *See In re Francis*, 186 S.W.3d at 541–43; *see also In re Angelini*, 186 S.W.3d at 560 (likewise holding, prior to amendment of section 141.032, "that defective filings could be remedied after the filing deadline *to correct a party official's violation of a statutory duty*" [emphasis added]); *In re Holcomb*, 186 S.W.3d at 555; *In re Gamble*, 71 S.W.3d at 318. The supreme court limited the right to equitable relief to the situation involving facial defects in an early-filed application, wherein a potential candidate could correct the defects prior to the filing deadline if the party chair timely reviewed the application and notified the candidate of the defect. *See In re Francis*, 186 S.W.3d at 542–43. The court also specifically held that equitable relief "does not reach forgery, fraud, or other non-accidental defects discoverable only by independent investigation." *Id.*

Here, the trial court found that Salazar's application, including the petition, was *not* facially defective. As a result, neither the HCRP nor Woodfill was required to reject Salazar's application; rather, Woodfill was entitled to treat each signature on Salazar's petition as valid, because her petition contained affidavits

34

that facially complied with Texas Election Code section 141.065(a).  *See* TEX. ELEC. CODE ANN. § 141.065(b).  The application was not improperly accepted by Woodfill and the HCRP.  It was only after Risner conducted an independent investigation and filed a challenge to Salazar's application that the forged signatures and the fraudulent circulators' affidavits were discovered.  Thus, the HCRP and Woodfill did not fail to timely discover any facial defects in Salazar's application and notify her of such defects, because there were no facial defects in the application.  Instead, this case falls within the first limitation the Supreme Court of Texas identified in *In re Francis*: this case concerns forgery, fraud, or other non-accidental defects discoverable only by independent investigation.  186 S.W.3d at 542.

"[C]andidates must bear ultimate responsibility for filing a proper application and petition."  *Id.* at 541.  Neither the HCRP nor Woodfill failed to abide by their statutory obligations in this case.  And, although Salazar was unaware of the untruthful statements contained in her petitions, she is responsible for the contents of her application.  *See id.* at 543 (holding that availability of limited opportunity to cure "does not absolve candidates of the need for diligence and responsibility in their filings; party chairs must only notify them of defects, not do their work for them"); *Escobar v. Sutherland*, 917 S.W.2d 399, 405 (Tex. App.—El Paso 1996, orig. proceeding) ("[I]n the end, it is the candidate who must

insure that the application complies with established law. If the candidate does not, he is at risk of having his candidacy rejected; if not by the County Chair, then by the courts."). Accordingly, we hold that the trial court erred when it concluded, as a matter of law, that Salazar was entitled to an opportunity to cure her application.

*Risner Did Not Waive His Objection To The Opportunity To Cure*

In her response brief, Salazar argues that Risner waived his objection to the trial court's order granting her an opportunity to cure her petition, because he did not file any objections by the May 16, 2014 deadline imposed by the trial court.

In its order granting a temporary injunction, the trial court abated the lawsuit and granted Salazar an opportunity to cure her defective petition pages by seeking new signatures. In the order, the trial court granted Risner leave to file any objections to the newly-obtained signatures by May 16, 2014. In other words, the trial court required Risner to file any challenges to Salazar's amended petition pages by May 16, 2014. The trial court's order did not impose an obligation on Risner to object to the trial court's abatement and granting of an opportunity to cure by May 16, 2014.

Further, Risner objected to the admission of the new petition pages when they were offered at the hearing on the permanent injunction, and he timely appealed from the trial court's final judgment, wherein the trial court granted

36

Salazar's request for an opportunity to cure her defective application. We conclude that Risner did not waive his objection to the trial court's order granting Salazar's claim for relief. *See* TEX. R. APP. P. 33.1

*Salazar's Application Did Not Meet The Statutory Requirements*

Salazar's application, as of the December 9, 2013 filing deadline, did not contain the 250 valid signatures required by statute. *See* TEX. ELEC. CODE ANN. § 172.021(e). Salazar was not entitled to an opportunity to cure her application after the deadline, and her application must therefore be evaluated without the amended petition pages. Without the amended petition pages, Salazar's application did not meet the statutory requirements for a valid application. *See id.* § 172.021(a), (e).

*Risner Is Entitled To Injunctive Relief*

Because her application did not satisfy the statutory requirements for a valid application, Salazar's name appeared on the Harris County Republican Party's primary election ballot in violation of the Election Code, and, should Salazar's name be certified for inclusion on the November general election ballot, her name would appear on the November 2014 general election ballot in violation of the Election Code. *See* TEX. ELEC. CODE ANN. §§ 141.031, 141.032(c), (d), 141.062, 141.063, 141.065, 172.021(a), (e), 172.029(d). Risner, the Democratic nominee for Harris County Justice of the Peace, Precinct 2, Place 2, is in danger of being

harmed by this violation by having to face an opponent who would be on the ballot in violation of the code. Risner has no adequate remedy at law to redress this injury other than a permanent injunction.

The trial court granted temporary injunctive relief but denied Risner's request for a permanent injunction based on Salazar's amendment to her petition pages. But the trial court erred by granting Salazar an opportunity to cure and by considering her amendment to her application, and, under Texas Election Code section 273.081, Risner is entitled to permanent injunctive relief. Under these circumstances, the trial court had no discretion to deny Risner's petition for a permanent injunction, and it abused its discretion by doing so. *See Terramar Beach Cmty. Ass'n*, 25 S.W.3d at 848.

## Conclusion

Based on the foregoing, we reverse the judgment of the trial court and render judgment granting Risner's request for a permanent injunction and enjoining the Harris County Republican Party and its chairman, Paul Simpson, from certifying Leonila Salazar's name for inclusion on the November 2014 general election ballot as the Republican nominee for the office of Harris County Justice of the Peace, Precinct 2, Place 2.

We dismiss any pending motions as moot. We direct the Clerk of this Court to issue the mandate immediately. *See* TEX. R. APP. P. 18.1(c).

38

Because of the time constraints on this action, we will entertain no motion for rehearing.


                                        Evelyn V. Keyes
                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Chief Justice Radack dissenting without opinion.