Opinion issued October 30, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00808-CV

———————————

**A\*MED MANAGEMENT, INC., A\*MED HEALTH, INC., D/B/A A\*MED COMMUNITY HOSPICE, AND A\*MED SERVICES, INC., D/B/A A\*MED HOME HEALTH, Appellants**

**V.**

**EUTIVA THOMAS, Appellee**

———————————

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 19-CV-1003**

———————————

## MEMORANDUM OPINION

This is an appeal from a final judgment in a suit brought by a home healthcare services company against its former employee. After a jury found that the former employee breached a non-compete, non-solicitation, and confidentiality

agreement, the jury awarded zero damages. The trial court then denied the home healthcare services company's request for a permanent injunction and attorneys' fees. The home healthcare services company now appeals.

We affirm.

## Background

Eutiva Thomas began working for A*Med Management, Inc. in 2010. In 2019, Thomas signed a confidentiality agreement requiring her not to disclose any confidential information, primarily referral sources,[1] both during and after her employment with A*Med.

When Thomas resigned from A*Med and started working for a competitor, Providence Home Health Services, Inc., A*Med sued Thomas for over $1,000,000 in damages and equitable relief, including a temporary and permanent injunction. After A*Med obtained a temporary injunction, Thomas and Providence appealed to this Court and we affirmed.[2]

Three years later, a jury heard A*Med's claims for breach of the confidentiality agreement and misappropriation of trade secrets. Although it found

---

[1]  A*Med paid employees like Thomas to market its hospice services to physicians, case managers, and social workers, who would then refer patients to A*Med's hospice services. The jury agreed with A*Med that these physicians, case managers, and social workers were confidential referral sources

[2]  *See Thomas v. A*Med Mgm't., Inc.*, No. 01-19-00564-CV, 2020 WL 5269412 (Tex. App.—Houston [1st Dist.] Sept. 3, 2020, no pet.) (mem. op).

that Thomas failed to comply with the confidentiality agreement and that she misappropriated trade secrets, the jury awarded A*Med zero dollars in damages. But the jury awarded A*Med $310,107 in attorney's fees.

After the verdict, A*Med moved for entry of judgment and a permanent injunction. A*Med argued that based on the jury's findings that Thomas violated the confidentiality agreement, A*Med was entitled to a permanent injunction restricting Thomas from disclosing confidential information.

Thomas opposed the request for a permanent injunction because the evidence did not show she committed a wrongful act beyond what was already addressed at trial. Thomas further argued that the record showed no evidence of imminent harm or irreparable injury.

At a post-verdict non-evidentiary hearing, A*Med asked the trial court to convert the 2019 temporary injunction to a permanent injunction and to award attorney's fees based on that recovery.

In response, Thomas acknowledged her wrongful act in 2019, but she disagreed with A*Med's claim of imminent harm and irreparable injury. She noted that any harm to A*Med occurred in 2019, that A*Med's witness testified that the company's damages had ceased, and that the jury awarded no damages.

Thereafter, the trial court signed an August 9, 2022 judgment, stating that A*Med brought suit against Thomas for breach of a noncompete agreement and

3

that A*Med would take nothing from Thomas and Thomas would take nothing from A*Med.[3]  The trial court denied all further relief not expressly granted in its August 9 judgment.

A*Med then sought reconsideration of its motion for entry of final judgment and permanent injunction and alternatively, a motion for new trial.  A*Med contended that the trial court had to grant a permanent injunction in accordance with the jury's findings because Thomas's obligations to protect and preserve A*Med's confidential information and trade secrets are ongoing and perpetual obligations that survive the termination of her employment.  A*Med argued that "it cannot be credibly disputed that Thomas remains in a position to use [A*Med's] confidential information and trade secrets, which is the controlling issue before the Court in its analysis."

Thomas responded to A*Med's motion for reconsideration, arguing that A*Med's sole purpose in seeking a permanent injunction at this stage of the case was to obtain an award of attorney's fees.  Thomas stated that at no time during trial was any reference made to support the need for a permanent injunction and "[n]o equity argument can be argued in good faith contending such a permanent injunction order is appropriate."

---

[3]     Thomas had counterclaimed for A*Med's tortious interference with her contract with Providence.

4

After a non-evidentiary hearing on its motion to reconsider, the trial court denied A*Med's motion for reconsideration of its motion for entry of judgment and permanent injunction and alternative motion for new trial.

A*Med and Thomas filed timely notices of appeal.[4]

## Permanent Injunction

In its first issue, A*Med argues that the trial court abused its discretion in denying its request for a permanent injunction.

### A. Standard of Review and Applicable Law

To obtain permanent-injunctive relief, a party must show all of the following: (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Risner v. Harris Cnty. Republican Party*, 444 S.W.3d 327, 339 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202, 208 (Tex. App.—Houston [1st Dist] 2018, no pet.) (listing four elements of permanent injunction in determining whether trial court abused its discretion in case brought under Texas Trade Secret Act). When "determining the appropriateness of a permanent injunction," a court "should balance the competing equities, including the public interest." *Risner*, 444 S.W.3d at 339.

---

[4] Thomas subsequently filed a motion to dismiss her appeal, which we carried with the case. We grant the motion and dismiss her appeal. *See* TEX. R. APP. P. 43.2(f).

5

We review a trial court's ruling on an application for a permanent injunction for an abuse of discretion. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690–91 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Operation Rescue–Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998)). An abuse of discretion occurs when the trial court (1) acts arbitrarily and unreasonably, without reference to guiding rules or principles or (2) misapplies the law to the established facts of the case. *Id.* "The trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision." *Id.*

## B. Elements of Permanent Injunction

### 1. Imminent Harm and Irreparable Injury

Because they are dispositive, we limit our analysis to the elements of imminent harm and irreparable injury. A*Med argues that it established that Thomas's unauthorized use and disclosure of its confidential information caused it imminent harm and irreparable injury due to the jury's findings to Questions 3, 5, and 6. The trial court had vast discretion in determining whether to issue the injunction, and we conclude it did not abuse its discretion, on this record, in denying the request.

6

In response to Question 3, the jury found that Thomas failed to comply with the confidentiality clause in the confidentiality agreement. In response to Question 5, the jury found that A*Med owned trade secrets. And in response to Question 6, the jury found that Thomas misappropriated A*Med's trade secrets. Based on these affirmative answers, A*Med contends that it "cannot be credibly disputed that Thomas remains in a position to use A*Med's confidential information and trade secrets." Further, A*Med maintains that "[f]or these reasons alone, A*Med established imminent and irreparable harm as a matter of law."

While these findings establish that Thomas violated the confidentiality clause and that she misappropriated trade secrets in 2019, they do not allow us to conclude that the trial court abused its discretion in denying the forward-looking permanent injunction—a decision that turns on the elements set forth above. *See Huynh v. Blanchard*, 694 S.W.3d 648, 673, 677 (Tex. 2024); *see also Luminant Energy Co. v. Public Util. Comm'n of Tex.*, 665 S.W.3d 166, 181 (Tex. App.—Austin 2023) ("An injunction is inherently forward-looking, intended to prohibit present or future conduct."), *rev'd on other grounds*, 691 S.W.3d 448 (Tex. 2024).

To be entitled to a permanent injunction, A*Med had to present evidence to the trial court in support of its request. *See Operation Rescue-Nat'l*, 975 S.W.2d at 560; *TMRJ Holdings*, 540 S.W.3d at 208. Other than relying on the jury's findings to Questions 3, 5, and 6, A*Med does not direct us to any evidence in the record

7

that supports the existence of imminent harm or irreparable injury after the events that formed the basis of the suit. *See, e.g.*, *Tanglewood Homes Assoc. Inc. v. Feldman*, 436 S.W.3d 48, 77 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (noting that trial court did not abuse its discretion when it rejected plaintiffs' request for permanent injunction because plaintiffs did not point to any record evidence that defendant intended to violate declaratory judgment's requirement once appellate process is complete).

Instead, A*Med's brief merely cites various authorities in support of its request for a permanent injunction.[5]  But merely citing cases—without pointing to evidence in the record that supports each of the required elements—does not demonstrate that the trial court abused its discretion in denying a permanent injunction.  We are thus left to scour the record for evidence supporting A*Med's position.  But in doing so we would be abandoning our role as impartial judges and

---

[5]     A*Med cites cases such as *IAC Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191 (Tex. App.—Fort Worth 2005, no pet.) for the propositions that "[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law[,]" and that "when a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed."  A*Med does not direct us to evidence that Thomas is threatening to disclose trade secrets or that Thomas is currently in a position to use trade secret information.  Further, *IAC* is distinguishable because the appellate court was concerned with whether the applicant had a probable, imminent, and irreparable injury in the interim before trial, as opposed to whether applicant was entitled to a permanent injunction after trial. *See Tesoro Corp. v. Tesoro Corp.*, No. 13-14-00511-CV, 2016 WL 872647, at *5 (Tex. App.—Corpus Christi Feb. 18, 2016, pet. denied) (noting that in temporary injunction cases, plaintiff only has to show probable irreparable injury).

8

becoming an advocate for a party. And that we may not do. *See Walker v. Eubanks*, 667 S.W.3d 402, 407–08 (Tex. App.—Houston [1st Dist.] 2022, no pet.) ("We are not responsible for identifying possible trial court error, searching the record for facts favorable to a party's position, or conducting legal research to support a party's contentions.").

We note, however, that the record does show that Walt Crowder, A*Med's owner, testified repeatedly that Thomas's actions caused harm for only a distinct six-month period in 2019 and that he was seeking lost profit damages only from this time period. And A*Med did not present any evidence that Thomas had been disclosing trade secrets in 2022 or that she was threating to disclose trade secrets.

Indeed, although the trial court conducted two post-trial hearings on A*Med's request for a permanent injunction, A*Med presented no evidence supporting that request. And, again, a trial court has vast discretion over whether to issue an injunction. *See Pike v. Texas EMC Mgmt.*, 610 S.W.3d 763, 792 (Tex. 2020); TEX. CIV. PRAC. & REM. CODE § 134A.003 ("Actual or threatened misappropriation may be enjoined. . . ."); TEX. GOV'T CODE § 311.016(1) ("May" as used in statute creates discretionary authority). Accordingly, because A*Med has not pointed us to any evidence of Thomas causing imminent harm and

irreparable injury in 2022, we cannot conclude that the trial court abused its discretion in denying A*Med's request for a permanent injunction.[6]

We overrule A*Med's first issue.

Because A*Med's second issue, the recovery of attorney's fees, is solely dependent on the success of its first issue, we must overrule A*Med's second issue.

## Conclusion

For all of the reasons above, we affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

---

[6]  Although the jury found that Thomas breached the confidentiality agreement—which contemplated injunctive relief for a violation—such actions do not bind the trial court to grant a permanent injunction. *See Malone v. PLH Grp., Inc.*, No. 01-19-00016-CV, 2020 WL 1680058, at *6 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, pet. denied) (mem. op.) ("[A] contracting party's acknowledgement that the other contracting party has a right to equitable relief does not bind judicial actors or require a court to grant the equitable relief ultimately requested. Trial courts are afforded discretion in granting equitable relief.").