**Robert C. LIVINGSTON, Appellant**

**v.**

**Catherine LIVINGSTON, Appellee**

**NO. 01-16-00127-CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued September 21, 2017

**582**

Phillip R. Livingston, PHILLIP R. LIVINGSTON, PC, 9668 Westheimer Rd., #200-109, Houston, Texas 77063, Scott Williams, LAW OFFICE OF SCOTT WILLIAMS, 7715 Meadowbriar Lane, Houston, Texas 77063, for Appellant.

Robert Teir, Robert Teir, PLLC, 845 FM 517 W, Suite 200, Dickinson, Texas 77539-2903, Houston, Texas 77063, for Appellee.

Panel consists of Justices Jennings, Higley, and Massengale.

## OPINION

Laura Carter Higley, Justice

This suit arises from the acrimonious relationship between Catherine Livingston and her step-son, Robert Livingston. Catherine sued Robert for assault, false imprisonment, and infliction of emotional distress. A jury found that Robert had not assaulted or falsely imprisoned Catherine, but it did find that Robert had intentionally inflicted severe emotional distress on Catherine and that Robert had acted with malice. Catherine recovered no actual damages; however, the trial court rendered a permanent injunction against Robert, enjoining him from approaching Catherine within 1,000 feet, from knowingly entering any property where Catherine was present, and from contacting her.

Robert appeals the permanent injunction. In four issues, he contends that the pleadings, the jury's findings, and the evidence do not support the permanent injunction, and he asserts that the injunction does not comply with Rule of Civil Procedure 683. Because Robert has not shown that the trial court abused its discretion in rendering the injunctive relief, and because Rule 683 does not apply to the permanent injunction, we affirm.

## Background

In June 2015, eighty-year-old Stuart Livingston resided in an assisted living facility. He had been diagnosed with dementia and could no longer care for himself. His wife of 29 years, 76-year-old Catherine, also could not care for him, but Catherine visited Stuart at the assisted living facility.

Stuart had three adult sons from his first marriage: Stuart, Jr., Phillip, and Robert. Years before, Stuart had signed a medical power of attorney, giving Phillip the authority to make health care decisions for him. Stuart had given Robert secondary power of attorney.

Robert and Phillip agreed that Robert would take over the duty of making Stuart's health care decisions. Robert would later testify that, because he had concerns about Catherine interfering in Stuart's healthcare, he went to speak to his father about her interference on June 13, 2015. When Robert arrived at the assisted living facility that day, Catherine was there visiting Stuart.

It is at this point that Robert's and Catherine's stories diverge regarding what happened that day.

According to Robert, when he entered his father's room, Stuart was lying on the bed, and Catherine was sitting in a chair. Robert told Stuart that Catherine's actions at the assisted living facility needed to change. Robert claimed that Catherine then grabbed her mobile phone, got up, walked over to Stuart, and began "yelling and screaming and waving her hand." She then laid on top of Stuart. While lying down, Catherine called 9-1-1 on her mobile phone. Catherine then got up from the bed and showed the phone to Robert. The phone's screen indicated that Catherine had called the Houston Police Department. Catherine asked him, "Are you scared now?" Robert would later testify that Catherine then "ran from the room yelling and screaming, '911.'"

Catherine told a different version of the events. In her trial testimony, she claimed that Robert "stormed into [Stuart's] room." He waved a key, stating, "I have dad's key, ha ha ha." According to Catherine, Robert was "shouting at the top of his voice, he was red in the face and waving his arms." Robert used "a lot of cuss words, and said things are going to change around here."

Catherine claimed that, when she tried to leave the room, Robert blocked the door. Catherine later testified, "When I got very close to the door he shoved me against the wall or the door frame and I lost my balance, my balance wasn't very good, and [I] fell to the floor." Catherine claimed that Robert then stood over her and continued to yell at her.

Catherine said that she then left the room and asked someone to call 9-1-1. The police did not come to the assisted living facility, but Catherine contacted the authorities later that day. Although the police investigated the matter, no criminal charges were filed against Robert.

Four days later, Catherine sued Robert for assault and false imprisonment based on the June 13 incident at the assisted living facility. Catherine sought actual and exemplary damages from Robert. She also requested a preliminary and permanent injunction against Robert, requesting, inter alia, that he be enjoined from approaching her within 1,000 feet and from knowingly entering property where she was present. Soon thereafter, Catherine filed an application for temporary injunction, reiterating her request for injunctive relief.

Catherine later filed a supplement to her application for temporary injunction. In

the application, Catherine alleged that, on August 24, 2015, Robert had called her on her mobile phone and made the following threat: "I'm going to hurt you. I am going to f* * *ing kill you. I'm going to kill you and your mother* * *k* * son." Based on these additional allegations, Catherine reiterated her request for both temporary and permanent injunctive relief.

The case was tried to a jury in November 2015. The record reflects that Stuart died the second day of trial.

Catherine and Robert each testified at trial, giving his and her version of what had occurred in Stuart's room on June 13, 2015. Catherine asserted that Robert had shoved her to the floor, and Robert vehemently denied that he had done so.

Catherine also testified about the phone call that she received from Robert on August 24, 2015. She testified that, on that date, she was in a rehabilitation facility recovering from hip replacement surgery. Catherine stated that, when she answered her mobile phone, Robert began yelling and swearing at her. She said that Robert was "furious" and that he was "very, very angry." According to Catherine, Robert sounded "out of control." Catherine testified that Robert called her a "mother* * *er" and threatened her, expressly telling her that "he had had it, and he was going to hurt me, and he was going to kill me." Catherine further testified that Rob-

ert had threatened to kill her "motherf* * *ing son." She stated that Robert had learned that her son had been visiting Stuart, and Robert was unhappy about that.

Catherine also testified that Ida Glover, a personal care attendant, was with her in her room when Robert called. She stated that Glover had taken the phone when she saw how upset Catherine was by the call. After Glover took the phone, Catherine said that Robert continued to yell, but then he hung up when he heard Glover's voice.

Glover also testified at trial. She stated that she was sitting next to Catherine when a man, who Catherine later said was her step-son, called on Catherine's mobile phone. Glover stated that Catherine immediately became upset when she answered the call. Glover could hear that the caller was yelling. Seeing how upset the call made Catherine, Glover took the phone. When she put it to her ear, she heard the man say, "Keep your mother* * *ing son away from my god* *mn father." Glover stated that she then ended the call.

Robert did not testify regarding the August 2015 phone call.[1] Nor did he offer any evidence to contradict Catherine's or Glover's testimony regarding the call.

The jury was asked to determine Robert's liability on three causes of action: assault, false imprisonment, and intentional infliction of emotional distress.[2] The jury

---

1. Robert asserts that he did not testify regarding the phone call because he believed that Catherine had abandoned the call as a basis for her claims. A discussion on the record before and during the charge conference indicates that Catherine abandoned the phone call as a basis for her assault claim, but she did not abandon it as a basis for her intentional infliction of emotion distress claim.

2. We note that Catherine's petition did not include a claim for intentional infliction of emotional distress; however, the record

shows that, at trial, the parties and the trial court understood that Catherine had asserted it as a cause of action. *Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding party's unpled issues are deemed tried by consent when both parties understood issues were developed and no objections were raised). Although, as discussed *infra*, Robert complains on appeal that Catherine did not plead the August 2015 phone call as a basis for her intentional-infliction-of-emotional-distress claim,

found that Robert had not assaulted or falsely imprisoned Catherine; but the jury did find that Robert had intentionally inflicted severe emotional distress on Catherine. Nonetheless, the jury found that Catherine had suffered zero dollars in actual damages. The jury, however, answered "yes" to the following question: "Do you find by clear and convincing evidence that the harm to Catherine Livingston resulted from malice?" Based on that finding, the jury determined that Catherine was entitled to $2,500 in exemplary damages.

Post-trial, Robert filed a motion to disregard the jury's verdict and to enter judgment. He requested the trial court to render a take-nothing judgment against Catherine based on the jury's negative findings on Catherine's assault and false imprisonment claims and based on its zero-damages finding.

Robert requested the trial court to disregard the jury's affirmative finding with regard to Catherine's intentional infliction of emotional distress claim. He pointed out that intentional infliction of emotional distress is a gap-filler tort that applies only to a claim for which a plaintiff has no other cause of action. Robert averred that Catherine was pursuing recovery based only on the alleged June 2015 incident in Stuart's room. Robert asserted that, because she had redress through the torts of assault and false imprisonment for that incident, Catherine was not entitled to recover by way of the gap-filler tort, intentional infliction of emotional distress. Robert claimed that, based on the jury's finding of no actual damages, a take-nothing judgment should be rendered in his favor. Robert further asserted that Catherine was not entitled to a permanent injunction because

she had not shown that she was at risk of imminent harm from Robert.

Catherine also filed a motion to enter judgment. She asserted that she was entitled to the $2,500 in exemplary damages found by the jury, even though the jury had also found that she had suffered zero dollars in actual damages.

The trial court conducted a hearing on the countervailing motions. The issue of whether of Catherine was entitled to a permanent injunction against Robert was hotly contested. As he had in his motion, Robert argued that the injunction could not be based on the jury's determination that he had intentionally inflicted severe emotional distress on Catherine because the only basis for that claim was the June 2015 incident for which Catherine had also asserted the torts of assault and false imprisonment. Robert asserted that, because Catherine had redress through these torts, she was not entitled to rely on the gap-filler tort of intentional infliction of emotional distress. Robert pointed out that the jury had found against Catherine with regard to her assault and false imprisonment claims.

Catherine responded to Robert's arguments by pointing out that she had supplemented her injunction application to include a request for relief based on the August 2015 telephone call. Catherine also pointed out that, at trial, she had asserted that the threatening phone call supported her claim for intentional infliction of emotional distress. She further pointed out that she had testified regarding the threats of violence Robert made against her, and she cited the testimony of Ida Glover, who had been present when she received the call. She called attention to

Robert does not complain that Catherine wholly failed to plead the cause of action in

the trial court.

the lack of evidence Robert offered at trial to counter her claims regarding the phone call.

Robert also asserted that Catherine's claim for injunctive relief was undermined by the fact that Stuart had died. He averred that this had eliminated the reason for Catherine and Robert to interact. Catherine responded by pointing out that Robert's threats had not been limited to harming Catherine only while Stuart was alive.

Robert further pointed out that Catherine never had the trial court sign a temporary injunction against Robert, indicating that Catherine did not necessarily fear Robert. However, during a discussion at the hearing, mention was made that the parties had agreed to a temporary injunction, which Robert's attorney described as amounting to an agreement that "you stay away from me, [and] I stay away from you."

After hearing the parties' arguments, the trial court stated that Catherine was entitled to injunctive relief that would order Robert "not to call [Catherine] or to intentionally approach her or go near her." The trial court indicated that it based its decision to order injunctive relief on the jury's unanimous intentional infliction of severe emotional distress and malice findings. The court emphasized, "[I]t's one thing if the jury had just found intentional infliction of severe emotional distress, but they also found that it was committed with malice.

The trial court further explained,

I'm going to go ahead and I'm going to enter the judgment and render judgment for the permanent injunction. I don't feel it's in any way unduly restrictive or harsh on Mr. Livingston. If he has no intent of calling Mrs. Livingston, which I would hope would be the case, or going near her, this permanent injunction should not cause any inconvenience or certainly any harm to him, but would give Mrs. Livingston the court protection and the knowledge that Mr. Livingston has been ordered by the Court not to call her anymore and not to go near her, because again, the jury found unanimously that he committed a malicious act causing her severe emotional distress.

The trial court also noted that it considered Catherine's age (she was 76) in making its decision to grant the injunction.

The trial court further noted that it "want[ed] to state for the record" that it had observed Robert acting with "a degree of visible aggressiveness" and belligerence during trial while he was being questioned by Catherine's counsel. The trial court also stated, "The Court has even noticed even as he sat here in the courtroom today ... I see what appears to be signs of a temper and aggressiveness."

At the end of the hearing, the trial court discussed the wording of the injunction with the parties. Catherine had filed a proposed judgment with the court, containing injunctive language. The trial court reviewed the wording of the proposed judgment and asked Robert whether he wanted to have input regarding the form of the injunction's language. Robert stated that he objected to "the entirety" of the injunction. The trial court responded,

I understand that. Right now I'm just looking at the form. And the Court respects your right to appeal this, I'm just trying to come up with something that's in form that should the Court sign it and should it be affirmed by the Court of Appeals that the language itself would be the appropriate language.

Robert responded, "My objection stands," and made no comment or objec-

tion to the specific wording of the injunction.

At the end of the hearing, the court signed a judgment. With regard to damages, the court ordered that Catherine "takes nothing from Defendant Robert Livingston." Under the heading "Injunction," the trial court ordered as follows:

Defendant Robert Livingston is permanently enjoined as follows:

Defendant Robert Livingston, and his agents, officers, servants, and employees, are enjoined from, directly or indirectly:

(i) Approaching within 1,000 feet (300 meters) of Catherine Livingston;

(ii) Knowingly entering upon any property where Catherine Livingston is located;

(iii) Contacting or attempting to contact Catherine Livingston by telephone, mail, delivery, email, in person or by any other means.

Robert did not file any post-judgment motions, complaining of the injunction. Robert appealed, identifying four issues in which he challenges the permanent injunction.

## Basis for Permanent Injunction

In his first three issues, Robert asserts that trial court erred by rendering the permanent injunction. He contends that the injunction was not supported by Catherine's pleadings, by the jury's verdict, or by the evidence.

### A. Standard of Review & Applicable Law

 To obtain permanent-injunctive relief, a party must show (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Risner v. Harris Cty. Republican Party,* 444 S.W.3d 327, 339 (Tex. App.—Houston [1st Dist.] 2014, no pet.). When "determining the appropriateness of a permanent injunction," a court "should balance the competing equities, including the public interest." *Id.*

 We review a trial court's ruling on applications for permanent injunctions for an abuse of discretion. *Indian Beach Prop. Owners' Ass'n v. Linden,* 222 S.W.3d 682, 690–91 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Operation Rescue-Nat'l v. Planned Parenthood of Hous. Se. Tex., Inc.,* 975 S.W.2d 546, 560 (Tex. 1998)). An abuse of discretion occurs when the trial court (1) acts arbitrarily and unreasonably, without reference to guiding rules or principles, or (2) misapplies the law to the established facts of the case. *Id.* "The trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision." *Id.*

### B. Sufficiency of Pleadings

 On appeal, Robert asserts that Catherine's pleadings do not support the permanent injunction because her claim for injunctive relief was "clearly predicated on [Catherine's] contention that injunction was necessary to allow her to visit Stuart without interruption or interference by Robert. Upon Stuart's death, there was no imminent or continuing opportunity for Robert to interrupt or interfere as there was no opportunity for Catherine to visit Stuart." In other words, Robert asserts that the only basis for the injunction pleaded by Catherine was her assertion that the injunction was necessary to facilitate her visits with Stuart "without interruption or interference by Robert." Because Stuart died before the trial court rendered the permanent injunction, Robert argues that

there was no longer a valid basis, that is, an "irreparable injury" or an "imminent harm," pleaded by Catherine to support the permanent injunction at the time of its rendition.

As Robert's assertions intimate, a judgment must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief. *See King v. Lyons*, 457 S.W.3d 122, 126 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also* TEX. R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). "The purpose of pleadings is to define the issues at trial." *King*, 457 S.W.3d at 126 (citing *Garvey v. Vawter*, 795 S.W.2d 741, 742 (Tex. 1990)). Persons seeking a permanent injunction must be specific in pleading the relief sought, and courts are without authority to grant relief beyond that so specified in the pleadings. *Shields v. State*, 27 S.W.3d 267, 271 (Tex. App.—Austin 2000, no pet.). Yet, an injunction should be broad enough to prevent a repetition of the evil sought to be corrected. *Id.* "A pleading is sufficient if it gives the opposing party adequate information to enable him to prepare a defense." *King*, 457 S.W.3d at 126 (citing *Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex. 1982)).

Here, Catherine's pleadings sufficiently informed Robert that she sought a permanent injunction, not only to facilitate unimpeded visitation with her husband, but also to protect her from the violence with which she claimed Robert threatened her. In the supplement to her application for injunctive relief, Catherine alleged Robert told her on the telephone as follows: "I'm going to hurt you. I am going to f* * *ing kill you." Catherine indicated that injunctive relief was necessary to protect her from "the continuing nature and immediacy of the threat posed by Robert to Catherine's safety, security, and life"; thereby indicating that the threatened violence posed an irreparable and immediate injury. In her prayer for relief, Catherine did not limit her request for temporary and permanent injunctive relief to the premises where Stuart resided; rather, she also requested that Robert be enjoined from approaching her within 1,000 feet and from knowingly entering any property where Catherine was present. Thus, Catherine's pleadings sufficiently informed Robert of the basis of her claim for injunctive relief and presented a basis supporting the permanent injunction.

## C. Jury Findings

### 1. No deprivation of jury findings

Robert also contends that he was deprived his state constitutional right to have the jury determine whether Catherine was entitled to injunctive relief. *See* TEX. CONST. art. I, § 15 ("The right of a trial by jury shall remain inviolate. . . ."). He points out that no question was submitted to the jury addressing the elements of a permanent injunction.

We agree that a litigant is entitled to a jury trial when injunctive relief is sought. *See State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979); *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 70 (Tex. App.—San Antonio 2011, no pet.). However, for such relief, the role of the jury is limited to determining ultimate factual issues; it does not determine whether a party is entitled to a permanent injunction. *See Tex. Pet Foods*, 591 S.W.2d at 803. Instead, the trial court, exercising its chancery powers, determines the "expediency, necessity or propriety" of the requested equitable relief "based upon the ultimate issues of fact found by the jury." *See id.*; *see also Operation Rescue-Nat'l*, 975 S.W.2d at 554 (holding that question of whether imminent harm exists

to warrant injunctive relief is legal question for court, not factual question for jury). Here, Robert was entitled to have the jury determine ultimate issues of fact, but it was for the trial court, based on those factual determinations, to decide the expediency, necessity, and propriety of the injunctive relief requested by Catherine. *See Tex. Pet Foods*, 591 S.W.2d at 803.

The record shows that Robert was not deprived of his right to have the jury determine ultimate issues of fact in this case. The jury unanimously found that Robert had intentionally inflicted severe emotional distress on Catherine. In making this finding, the jury implicitly found—based on the charge's definition of intentional infliction of emotional distress—that Robert had "act[ed] intentionally or recklessly with extreme and outrageous conduct to cause [Catherine] emotional distress and the emotional distress suffered by the plaintiff was severe." The jury charge defined "extreme and outrageous conduct" as occurring "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community and that he had acted with malice." The jury, in a separate question, found "by clear and convincing evidence that the harm to Catherine Livingston resulted from malice," which the charge defined as "a specific intent by Robert Livingston to cause substantial injury or harm to Catherine Livingston."

**2. Intentional infliction of emotional distress question**

*a. Robert failed to show jury question not based on phone call.*

■ At the post-trial hearing on the motions to enter judgment, Catherine asserted that the jury's intentional infliction of emotional distress and malice findings supported her request for permanent injunction against Robert. Robert disagreed, claiming that the intentional infliction of emotional distress finding could not serve to support the injunctive relief awarded by the trial court.

Robert requested the trial court to disregard the jury's verdict with respect to the intentional infliction of emotional distress claim. Robert claimed that the jury charge should not have included a question regarding intentional infliction of emotional distress. He asserted that Catherine's only redress had been through the independent torts of assault and false imprisonment with regard to her claim that, on June 13, 2015, Robert shoved her to floor and then prevented her from leaving Stuart's room. He pointed out that the jury had found against Catherine on both of these causes of action.

Catherine responded by pointing out that she had supplemented her application for injunctive relief to include her claim that Robert had telephoned her in August 2015, threatening to hurt her and to kill her. Catherine asserted that these allegations permitted her to assert a claim for intentional infliction of emotion distress. The trial court agreed with Catherine, indicating that the jury's unanimous findings of intentional infliction of emotional distress and malice supported Catherine's request for injunctive relief.

■ On appeal, Robert reiterates that the affirmative finding of intentional infliction of emotion distress cannot serve to support the permanent injunction because Catherine was not entitled to a jury question on that claim. In support of his argument, Robert points out that intentional infliction of emotion distress is a "gap-filler tort, judicially created for the limited purpose of allowing recovery in

those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Intentional infliction of emotional distress "simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results." *Id.* (internal quotations omitted). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.*

Robert asserts that Catherine based her claim for intentional infliction of emotional distress *only* on the alleged incident in June 2015, a claim for which she already had redress under the torts of assault and false imprisonment. He avers that Catherine abandoned the allegation that, during a call in August 2015, Robert threatened to kill her. Catherine disagrees, averring that the threatening telephone call was a basis she asserted to support her intentional infliction of emotional distress claim.

The record supports Catherine's contention that she did not abandon her allegation regarding the phone call as a basis for her intentional infliction of emotional distress claim. In the midst of Catherine's trial testimony, Robert objected to Catherine testifying regarding the August 2015 phone call on the grounds that it was not relevant to her claims and that it was prejudicial. Robert also claimed that the call had not been pled as a basis for Catherine's causes of action.

Catherine responded, averring that the threatening phone call was a basis for her intentional infliction of emotional distress claim. Catherine confirmed that the phone call had been pled as a basis for injunctive relief and that she had disclosed in her discovery responses that the phone call served as a basis for her claim.

In addition, during closing arguments, Catherine made the following argument, demonstrating that she had not abandoned her allegation regarding the phone call as a basis for her intentional infliction of emotional distress claim:

And then you're asked about intentional infliction of emotional distress. We submit, ladies and gentlemen, that the evidence shows that there were two times at least that Robert Livingston intended to and did, in fact, inflict emotional distress, once when he stormed into the room yelling and screaming and shoved her and, second, when he made a threatening telephone call. I acknowledge that on the—our allegation of intentional infliction of emotional distress involving the storming into the room there's contrary testimony from the Defendant, but on the telephone call—and you heard testimony of threatening language, obscene language, language that threatened the life of her and her son. And what did you hear contrary to that?

To support his assertion that Catherine abandoned her allegation regarding the threatening phone call, Robert points to the charge conference. There, Robert objected to the submission of the issue of intentional infliction of emotional distress on the ground no evidence supported it. Catherine responded, "On intentional infliction of emotional distress, respectfully, the evidence is unanimous. There was no contradictory evidence to what occurred in the telephone call after [Catherine's] hip surgery and this Court—[.]" At that point, Robert's counsel interrupted, stating, "[T]he telephone call is off the table." Catherine's counsel responded that opposing counsel should not interrupt him. The trial court then stated,

I understand. Even though that's correct, Counsel shouldn't interrupt; but the phone call is not—wait a minute. What they're saying is they didn't—*the Plaintiff didn't ask for a separate submission on whether that [the phone call] constituted assault, but they are alleging it as evidence of intentional infliction of emotional distress.* So I'll let you complete—*I'm going to overrule the objection . . . .*

(Emphasis added.)

Robert asserts that the trial court's statement, "Even though that's correct," referring back to the statement by Robert's counsel that the phone call is "off the table," shows that Catherine had abandoned the phone call as a basis for her intentional infliction of emotion distress claim. We disagree.

Following the statement, "Even though that's correct," the trial court then said "wait a minute" and recognized that Catherine was not seeking to base her assault claim on the phone call. The court acknowledged that Catherine was "alleging [the phone call] as evidence of intentional infliction of emotional distress." The trial court then overruled Robert's objection to the submission of Catherine's claim for intentional infliction of emotional distress. The exchange and the record show that Catherine had not intended to abandon the phone call as a basis for her intentional infliction of emotion distress claim, although she had abandoned it as a basis for her assault claim.[3]

Robert also asserts that the form of the jury charge shows that Catherine was pursuing all of her claims, including the inten-

tional infliction of emotion distress claim, based solely on the June 2015 assault allegation. He points out that the charge included only one actual damages question. Robert avers that, if she had been pursuing her intentional infliction of emotion distress claim based on the August 2015 phone call, rather than the June 2015 assault, Catherine would have submitted a separate actual damages question to correspond to that incident. This argument, however, does not overcome the express assertions by Catherine, during her own testimony, during the charge conference, and during closing argument, indicating that the phone call was a basis for her intentional infliction of emotion distress claim. In short, Robert has failed to show that Catherine did not base her claim for intentional infliction of emotional distress on the August 2015 phone call, and thus he has not shown that the issue should not have been submitted to the jury.

#### b. *The Dissent.*

The Dissent asserts that evidence of the August 2015 phone call did not support the submission of the intentional-infliction-of-emotional-distress question because "an intentional threat of causing imminent bodily injury to another [such as the phone call] gives rise to the ordinary common-law tort of assault." In other words, the Dissent takes the position that the phone call was not a proper basis for Catherine's intentional-infliction-of-emotional-distress claim because she already had the tort of assault to seek redress for Robert's verbal threats, and any intentional infliction of emotional distress she suffered from the phone call was

---

3. The record indicates that, at some point, Catherine advocated for the phone call to serve as a basis for her assault claim as well as for her intentional infliction of emotional distress claim. However, the record also indicates that, prior to the charge confer-

ence, Catherine agreed to abandon the phone call as a basis for the assault claim, but she made clear at that time that she was not abandoning the phone call as a basis for her intentional infliction of emotional distress claim.

merely incidental to the tort of assault. *See Hoffmann–La Roche Inc.*, 144 S.W.3d at 447; *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). This may or may not be legally correct; however, Robert never objected to the submission of the intentional-infliction-of-emotional-distress question on the ground discussed by the Dissent: that Catherine had redress for the threatening phone call by way of the tort of assault. Instead, as discussed, Robert asserted that Catherine was not entitled to an intentional-infliction-of-emotional-distress question based on the phone call because she never asserted that conduct as a basis for an intentional-infliction-of-emotional-distress claim. *See Richard Rosen, Inc. v. Mendivil*, 225 S.W.3d 181, 194 & n.4 (Tex. App.—Austin 2005, pet. denied) (holding that appellant had not preserved complaint that appellee cannot recover under intentional-infliction-of-emotional distress claim when same actions forming basis of appellee's defamation claim are asserted to support intentional infliction claim because not raised in trial court).

The Dissent indicates that Robert did raise the objection in the trial court that Catherine's intentional infliction of emotional distress claim could not be based on the phone call because she already had the tort remedy of assault for that conduct. In support of this position, the Dissent points to statements in Robert's motion to disregard the jury's verdict in which Robert averred that Catherine's "claim for recovery under an IIED allegation is an alternative claim" to her "assault and false imprisonment claims," and as such she was "barred from any recovery under her IIED allegation and the claim should have never been submitted to the Jury." However, placing the quoted statements in the context of the entire motion shows that Robert was not arguing that Catherine could not recover under the theory of intentional infliction of emotional distress based on the August 2015 phone call because the tort of assault provided her redress for that conduct; rather, Robert was arguing only that Catherine could not base her intentional infliction of emotional distress claim on the June 2015 incident because she already had redress through the torts of assault and false imprisonment for that conduct.

Preceding the statement quoted by the Dissent, Robert asserted in the motion that "[Catherine] not only had substantive causes of action, she presented them to the Court and the Court provided its Charge to the Jury to determine the substantive claims of assault and false imprisonment." In making this assertion, Robert was arguing that Catherine could not recover under the gap-filler tort of intentional infliction because her claims for assault and false imprisonment had been presented to the jury in the jury charge. And the record shows that, as presented in the charge, the basis for these two claims was Robert's June 2015 conduct. With regard to assault, the jury question was limited to the June 2015 incident. The question asked the jury: "Did Robert Livingston commit an assault against Catherine Livingston on or about June 13, 2015?"

Also in the motion, Robert pointed out that Catherine had only one damages question for all of her claims. He averred, "Having offered only one measure of damages, regardless of the claim asserted, [Catherine] (and the Court) made clear that [Catherine's] alleged damages for IIED were indistinguishable from [her] alleged damages for assault and false imprisonment." Again, the only basis on which the jury was asked to determine whether Robert had assaulted and falsely imprisoned Catherine was his June 2015 conduct.

■ In addition, Robert made clear in his motion that he was asserting that Catherine could not recover based on intentional infliction of emotional distress because she already had the tort-remedies of assault and false imprisonment for Robert's June 2015 conduct—and nothing more—when he wrote:

> [I]n this case, [Catherine] testified to only one set of facts (the alleged assault and false imprisonment of June 13, 2015) in support of her claim for damages (which damages were presented to the Jury as the same for each and all causes of action asserted both by Plaintiffs testimony and by the Court's Charge). There were no separate facts for IIED from the facts alleging assault and false imprisonment.

Thus, when Robert wrote in his motion, as cited by the Dissent, that Catherine's "claim for recovery under an IIED allegation is an alternative claim" to her "assault and false imprisonment claims," and as a result she was "barred from any recovery under her IIED allegation and the claim should have never been submitted to the Jury," Robert was referring only to Catherine's claims for assault and false imprisonment based on his June 2015 conduct. Robert never claimed that Catherine could not bring an intentional infliction of emotional distress claim because she had the tort remedy of assault to seek redress for the August 2015 phone call. Instead, his argument with respect to the phone call was that Catherine had never asserted that conduct as a basis for intentional infliction of emotional distress. Those are very different objections. In reviewing this point, we are reminded that an "objection must apprise the trial court of the error alleged such that the court has the opportunity to correct the problem." *Burbage v. Burbage*, 447 S.W.3d 249, 257 (Tex. 2014); *see also Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) ("The cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it.").

Nor does Robert argue in his appellate brief that Catherine was not entitled to a jury question on intentional infliction of emotional distress because she already had redress for that claim by way of an assault claim. *See Moyer v. Moyer*, No. 03-03-00751-CV, 2005 WL 2043823, at *3 (Tex. App.—Austin Aug. 26, 2005, no pet.) (mem. op.) (holding that appellant had waived argument that gravamen of appellee's intentional infliction claim was assault and that appellee's redress was accordingly limited to recovery under that theory because complaint not raised in trial court or in appellant's initial appellate brief). The Dissent takes the position that Robert did raise this point because Robert states in his brief that he challenges the legal sufficiency of the evidence. However, as in in his post-verdict motion, the only gap-filler argument that Robert raises in his brief is to argue that the intentional-infliction-of-emotional-distress question should not have been submitted to the jury because Catherine already had the tort-remedies of assault and false imprisonment to seek redress for Robert's June 2015 conduct.

On appeal, as discussed *supra*, Robert's position with regard to the August 2015 phone call is to assert that, at trial, Catherine did not base any of her claims on that conduct. Robert's position is further seen in the following statement he makes in his brief: "Prior to Robert's testimony, Catherine's counsel announced it would not be submitting a jury question on the alleged August phone call.... The jury questions all related to the alleged events of June 13, 2015, as requested by Catherine and submitted by the trial court." Robert further claims in his brief: "There is no jury question which asks about the alleged

telephone call." And, as he had asserted in his post-verdict motion, Robert again asserts in his brief that "Catherine testified to only one set of facts (the alleged assault and false imprisonment of June 13, 2015) in support of her claim for actual damages (which damages were presented to the Jury as the same for each and all causes of action asserted both by Catherine)."

In short, Robert never made the objection that the Dissent now asserts supports reversal of the judgment. This Court cannot reverse a judgment on a basis not raised in the trial court or on appeal. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (reversing appellate court, noting appellate court cannot reverse based on complaint not raised in trial court or appellate briefs); *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989) (holding appellate court erred by reversing judgment based on arguments not raised by appellant). Because the issue was not raised or briefed by the parties, we do not decide whether the gravamen of Catherine's complaint about the phone call was the common-law tort of assault and cannot reverse on this point.

### 3. No actual damages finding required

Woven throughout his brief, Robert also identifies a number of other reasons why the jury's verdict does not support the permanent injunction. He points out that the jury found no actual damages for any of Catherine's causes of action. Robert asserts this shows that Catherine had "no actionable cause of action" and intimates that, for this reason, the jury's

affirmative finding regarding intentional infliction of emotion distress does not support the permanent injunction.

Robert's argument is without merit because he appears to confuse the concepts of liability and remedy. "A permanent injunction is an equitable remedy for some other cause of action and requires a liability finding after a final hearing on the merits." *Roper v. Jolliffe*, 493 S.W.3d 624, 633 (Tex. App.—Dallas 2015, pet. denied); *see also Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011). "A permanent injunction cannot be granted absent a finding of liability on some underlying cause of action." *Etan Indus., Inc.*, 359 S.W.3d at 625 n.2 (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n.2 (Tex. 1993)).

Here, the jury made a liability finding against Robert, determining that he had engaged in the wrongful conduct of intentional infliction of emotional distress. Although the jury did not find that Catherine was entitled to the legal remedy of damages, the trial court nonetheless had the discretion to award Catherine the equitable remedy of a permanent injunction based on the jury's liability finding. *Cf. Dawson v. Lipham*, No. 02-15-00136-CV, 2016 WL 3569248, at *3 (Tex. App.—Fort Worth June 30, 2016, no pet.) (mem. op.) (upholding issuance of injunctive relief against defendant based on liability findings of nuisance and trespass, even though plaintiff was not awarded damages on those claims against that particular defendant).[4]

---

4. We note that, throughout his brief, Robert mentions that Catherine did not expressly request injunctive relief in her post-trial motion to enter judgment. Instead, the focus of her motion was a request for the trial court to render judgment on the $2,500 in exemplary damages awarded to her by the

jury. Catherine made this request (which was denied by the trial court) even though the jury had found that she had suffered $0 in actual damages. *See AVCO Corp., Textron Lycoming Reciprocating Engine Div. of AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 662 (Tex. App.—Houston [14th

## D. Sufficiency of the Evidence

█ Robert also contends that the evidence was insufficient to support the permanent injunction, which enjoined him from (1) "approaching within 1,000 feet (300 meters) of Catherine Livingston"; (2) "knowingly entering upon any property where Catherine Livingston is located"; and (3) "contacting or attempting to contact Catherine Livingston by telephone, mail, delivery, email, in person or by any other means." In particular, Robert asserts that the evidence was insufficient to show that, without the injunction, Catherine would face imminent harm.

█ "Generally, the purpose of injunctive relief is to halt wrongful acts that are either threatened or in the course of accomplishment." *Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Whitaker v. Dillard*, 81 Tex. 359, 16 S.W. 1084, 1085 (1891) (observing that "the writ of injunction is used to prevent injuries, and not to afford remedy for injury inflicted"). Thus, "[a] prerequisite for injunctive relief is the threat of imminent harm." *Operation Rescue–Nat'l*, 975 S.W.2d at 554.

At trial, 76-year old Catherine testified that, while she was at a rehabilitation facility in August 2015, recovering from hip replacement surgery, Robert called, yelling and cursing at her. She said that he was "furious" and "very, very angry." Catherine stated that Robert sounded "out of control." She testified that, during the call, Robert called her a "motherf* * *er" and threatened her, expressly telling her that "he had had it, and he was going to hurt me, and he was going to kill me." Catherine also testified that Robert had threatened to kill her "motherf* * *ing son" because Robert had learned that Catherine's son had been visiting Stuart.

Catherine testified that she took Robert's threats seriously, stating that she feared for her life. Catherine responded affirmatively when her attorney asked if she wanted the trial court to issue "an injunction to keep Robert away from you." Catherine testified that the injunction was needed because Robert "can't seem to control his anger."

Catherine also offered the testimony of Ida Glover to corroborate her testimony regarding the phone call. Glover testified that she was sitting beside Catherine at the rehabilitation facility when Catherine received a call on her mobile phone. Glover stated that after receiving the call, Catherine was immediately in tears. Glover testified that, when Catherine moved the phone away from her ear, she could hear the caller, who was a man, yelling. Glover took the phone from Catherine. When she put the phone to her ear, Glover heard the

Dist.] 2007, pet. denied) ("Exemplary damages are not available unless the plaintiff establishes that it sustained actual loss or injury as the result of an underlying tort."). Robert intimates—without citing legal authority or offering precise argument—that the trial court should not have rendered the permanent injunction without that remedy being requested in Catherine's motion for entry of judgment. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). However, we note

that, at the post-trial hearing, the trial court also heard Robert's motion to enter judgment. The record shows that it was Robert, while arguing his motion, who first mentioned injunctive relief at the hearing, asserting that Catherine was not entitled to it. We also note that the trial court indicated on the record that it had received a draft judgment from Catherine, which included injunctive relief. Thus, to the extent that he is asserting Catherine waived the remedy of injunctive relief post-trial, the record does not support Robert's claim.

caller say, "[K]eep your motherf\*\*\*ing son away from my god\*\*mn father." Glover stated that Catherine told her that the caller was her step-son.

We acknowledge that an injunction is not proper when the claimed injury is merely speculative; fear and apprehension of injury are not sufficient to support an injunction. *See Frequent Flyer Depot Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 227 (Tex. App.—Fort Worth 2009, pet. denied); *Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "An injunction will not issue unless it is shown that the respondent will engage in the activity enjoined." *State v. Morales*, 869 S.W.2d 941, 946 (Tex. 1994). Here, the evidence showed that Robert called yelling and cursing at his elderly step-mother. He told Catherine that "he had had it." He stated that he would physically harm her and that he would kill her.

Robert claims that Catherine did not consider the threat to be imminent because she did not obtain a temporary injunction against Robert. However, Robert made the threatening phone call to Catherine while the case was pending. Catherine filed a supplemental request for a temporary and permanent injunction against Robert after he made the call. The record also indicates that, although not signed by the trial court, the parties had agreed to a temporary injunction between them, which Robert's attorney described as being to the effect: "you stay away from me, I stay away from you." Without more, we cannot conclude that the lack of a temporary injunction issued by the trial court prevented the trial court from exercising its discretion and determining that Catherine was susceptible to imminent harm without the injunction.

Robert further asserts that the threat is no longer imminent because, now that Stuart has died, Catherine and Robert no longer interact. However, Catherine did not testify that Robert qualified or limited his threat of physical harm to his interactions with her. Rather, Catherine testified that Robert stated that he would physically harm her, and he would kill her. Given the manner in which Robert stated the threat and its gravity, the trial court had sufficient evidence to exercise its discretion and conclude that Catherine had shown imminent harm.[5]

We hold that, in his first three issues, Robert has not demonstrated that the trial

---

**5.** Robert also complains that the trial court did not file findings of fact and conclusions of law in support of the permanent injunction, even though he timely requested them and timely filed a notice of past due findings. However, Robert's brief provides no legal authority or analysis regarding this complaint. Thus, the complaint is inadequately briefed and preserves nothing for our review. *See* Tex. R. App. P. 38.1(i). Nonetheless, we note, "when part of a cause is decided by a jury and part by the court, the party appealing the court-decided issue should request findings of fact and conclusions of law." *Operation Rescue–Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 937 S.W.2d 60, 82 (Tex. App.—Houston [14th Dist.] 1996), *aff'd as modified*, 975 S.W.2d 546; *Heafner & Assocs. v. Koecher*, 851 S.W.2d 309, 313 (Tex. App.—Houston [1st Dist.] 1992, no writ). If a trial court does not file timely requested findings of fact and conclusions, it is presumed harmful unless the record affirmatively shows the appellant suffered no harm. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). Here, the trial court's reasons for rendering the permanent injunction are apparent from the record. Robert has thoroughly briefed his issues on appeal, and the lack of findings has not affected our ability to evaluate his issues. Therefore, the record demonstrates that Robert has suffered no harm from the lack of the findings of fact and conclusions of law.

court abused its discretion when it rendered the permanent injunction. Accordingly, we overrule Robert's first, second, and third issues.

### Form of Permanent Injunction

■ In his fourth issue, Robert contends that the permanent injunction violates Texas Rule of Civil Procedure 683 because it fails to state the reasons for its issuance. *See* TEX. R. CIV. P. 683.

We have recognized that Rule 683's requirement "that reasons for issuance of an injunction be stated applies only to ancillary injunctive relief." *City of Houston v. Morgan Guar. Int'l. Bank*, 666 S.W.2d 524, 536 (Tex. Civ. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *see also Alexander Schroeder Lumber Co. v. Corona*, 288 S.W.2d 829, 835 (Tex. Civ. App.—Galveston 1956, writ ref'd n.r.e.). In addition, other courts have held that Rule 683 "applies only to temporary injunctions, in which the relief ordered is ancillary to the ultimate relief sought, and not to permanent injunctions." *Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.); *accord Bryan, Inc. v. State*, 459 S.W.2d 682, 688 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ refused n.r.e.) ("Rule 683 does not require that the court state a reason for a judgment for permanent injunction, as distinguished from an ancillary, temporary injunction."); *see also Qaddura v. Indo–European Foods, Inc.*, 141 S.W.3d 882, 892 (Tex. App.—Dallas 2004, pet. denied) ("[Rule 683] applies only to temporary restraining orders and temporary injunctions, not permanent injunctions.").

■ Robert asserts that Rule 683's requirement, mandating that the basis for issuance of the injunctive relief be stated in the order, applies here because the permanent-injunctive relief sought by Catherine was ancillary to her request for damages. To support his assertion, Robert points out that, in *Morgan Guaranty International Bank*, we held that Rule 683 did not apply "to final judgments whose sole object is to obtain a perpetual injunction" but instead applied "only to ancillary injunctive relief." 666 S.W.2d at 536. However, the key to whether Rule 683 applies to a particular order is not whether the order under review is a "final judgment[ ] whose sole object is to obtain a perpetual injunction;" rather, it is whether the injunctive relief ordered is ancillary, such as a temporary injunction. *See id.* ("Rule 683 requiring that reasons for issuance of an injunction be stated *applies only to* ancillary injunctive relief. . . .") (emphasis added.).

Here, the permanent-injunctive relief sought by Catherine was not ancillary to her request for damages. Rather, as pleaded, Catherine's request for permanent injunctive relief was at least co-equal with her request for damages.

The importance of the injunctive relief to Catherine's suit was illustrated by her testimony at trial. When she was asked whether she was seeking monetary damages, Catherine responded that she was and also clarified, "But that's not the entire reason for this lawsuit." Counsel then asked, "What is your primary purpose? Why—what is your main reason for being here?" Catherine responded, "I want Robert never to approach me in that way again." Because the record shows that Catherine's request for permanent injunctive relief was not ancillary, we conclude that Rule 683's provision requiring the reasons for issuance of the injunctive relief be stated in the order does not apply to the permanent injunction in this case.[6] *See id.*

---

6. We also note that the judgment can be read to provide some indication of the bases for

Robert also asserts in his fourth issue that the language of the permanent injunction was ambiguous and overly broad. Rule 683 provides that "[e]very order granting an injunction ... shall be specific in terms; [and] shall describe in reasonable detail ... the act or acts sought to be restrained...." Tex. R. Civ. P. 683. However, a review of Robert's brief shows that the substance of his complaints are not about the specificity of the injunctive language; rather, they are about the breadth of the language.

In his brief, Robert first complains that the injunction is too broad with regard to whom it applies. Robert also asserts that the injunctive language, enjoining him from approaching Catherine "within 1,000 feet (300 meters)," could subject him to an enforcement action from inadvertently approaching Catherine in a public place.[7] Similarly, with regard to the injunctive language enjoining him from "knowingly entering upon any property where Catherine Livingston is located," he asserts, "On a plain reading, if Robert and Catherine are occupying the same property for any purpose (e.g., concert, football game, public park, airport) Robert is in violation of the trial court's injunction." Thus, even though he asserts that the identified issues make the injunction ambiguous, Robert's arguments are in substance complaints that the language is overly broad.

Robert never raised his complaints about the over breadth of the permanent injunction in the trial court. As discussed, the trial court specifically inquired at the post-trial hearing whether Robert had any objections to the form, as opposed to the merit, of the permanent injunction and expressly sought his input into the injunction's language. Nevertheless, Robert declined, indicating that he generally objected to the rendition of the permanent injunction. Even after the trial court signed the judgment, Robert did not file a post-judgment motion to complain that the language of the permanent injunction was overly broad. Under the circumstances of this case, we conclude that Robert has waived these complaints on appeal. See Tex. R. App. P. 33.1; see also Ford v. Ruth, No. 03-14-00460-CV, 2016 WL 1305209, at *2 (Tex. App.—Austin Mar. 31, 2016, pet. denied) (mem. op.) (holding that appellant's complaint that language of permanent injunction was overly broad was waived when not presented in trial court).

We overrule Robert's fourth issue.

## Conclusion

We affirm the judgment of the trial court.[8]

Justice Massengale, dissenting.

Michael Massengale, Justice, dissenting.

Appellant Robert Livingston challenges the legal sufficiency of the evidence to support a permanent injunction. Appel-

---

7. Robert also points out that 1,000 feet and 300 meters are not exactly the same measurement. However, we note that 1000 feet is 304.8 meters, and 300 meters is 984.3 feet, not a significant enough distinction to render the injunction ambiguous.

8. In his reply brief, Robert asserts that "sanctions are appropriate" against Catherine because, he claims, she has misrepresented the record. We do not agree that sanctions are appropriate.

the issuance of the injunctive relief. The jury's questions and answers were set out verbatim in the judgment, including the jury's finding that Robert "intentionally inflict[ed] severe emotional distress on Catherine Livingston." The judgment also contained the jury's finding that Robert acted with malice, indicating that Robert had a specific intent "to cause substantial injury or harm to Catherine Livingston."

lant's Brief at 15–17. He filed a motion to disregard the jury verdict on the grounds that appellee Catherine Livingston was not entitled to recover on her intentional infliction of emotional distress cause of action. CR 69–71. This motion specifically stated that Catherine's "claim for recovery under an IIED allegation is an alternative claim" to her "assault and false imprisonment claims," and as such she was "barred from any recovery under her IIED allegation and the claim should have never been submitted to the Jury." CR 71 (citing *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004); *Draker v. Schreiber*, 271 S.W.3d 318, 323 (Tex. App.—San Antonio 2008, no pet.)). This preserved the complaint for appeal. *See, e.g., Pointe W. Ctr., LLC v. It's Alive, Inc.*, 476 S.W.3d 141, 148 (Tex. App.—Houston [1st Dist.] 2015).

"[A] claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). In approving the finding of intentional infliction of emotional distress in this case, the court relies on evidence of a phone call in which Robert threatened to "hurt" and "kill" Catherine. But an intentional threat of causing imminent bodily injury to another gives rise to the ordinary common-law tort of assault. *See, e.g., Jones v. Shipley*, 508 S.W.3d 766, 768–69 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

"Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Zeltwanger*, 144 S.W.3d at 447; *see also Creditwatch*, 157 S.W.3d at 816. No question should have been submitted to this jury on the tort of intentional infliction of emotional distress. The jury's answer on that question as incorrectly submitted in this case should have been disregarded. There was no legitimate jury finding of a wrongful act by Robert, and accordingly the permanent injunction against him was entered in error. Because the court concludes otherwise, I respectfully dissent.