**Opinion issued August 14, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00914-CV

_____

**MATTHEW DAVIDSON, Appellant**

**V.**

**CITY OF HOUSTON, Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-74777**

---

## MEMORANDUM OPINION

Matthew Davidson appeals the take-nothing judgment entered by the trial court in his action for declaratory judgment and to remove cloud from title, in which he challenged the validity of the City of Houston's placement of a lien on his

property to recoup expenses that the City incurred removing weeds, brush, and rubbish from his property in an emergency abatement.

In three issues, Davidson contends that the trial court erred in granting judgment for the City because its abatement of Davidson's property violated Texas law.

We affirm.

**Background**

In his live petition, Davidson alleged that in May 2013, he bought a 1.29-acre property located on Player Street in Houston, Texas (the "property"). The property had fencing but was otherwise unimproved. In July 2019, City workers cut trees and shrubs on the property without Davidson's authorization. The City then placed an approximately $17,000 lien on the property for the cost of clearing it.

The City justified the work as an "emergency abatement" and invoked Texas Health and Safety Code section 342.008 and City of Houston Code of Ordinances section 10-453(e) as authority for clearing the property. But, according to Davidson, there was no showing that the property was an "immediate danger" to the life, health, or safety of any person as required by section 342.008.

Davidson sought a temporary injunction against the City to prevent it from doing any more cutting, mowing, or clearing of the property, arguing that doing so "would constitute a repeated and continuing damage to the property and the flora

2

and fora therein." Davidson also brought an action to remove the cloud on his title to the property caused by the City's lien, asserting that the City's actions constituted a taking without just compensation in violation of Texas Constitution Article 1, section 17. And Davison asked for a declaratory judgment that City Code of Ordinances section 10-453 was contrary to Texas Health and Safety Code section 342.008(a) because it allowed for emergency abatement without notice for all weeds and brush over 48 inches without also showing that the weeds were "an immediate danger to the health, life, or safety of any person."

At the bench trial, Davidson testified that he purchased the property in May 2013. It had been neglected, so he cleaned it up. He planted fruit trees, ornamental grasses, native Texas plants, and grapevines. He also cultivated various food crops, including melons and squash. He "grew so many fruits and vegetables" that he "gave them away many times."

Davidson also "encourage[d] native species to grow" on the property to create a habitat for wildlife. Squirrels ate acorns from the live oak trees on the property and there were birds and rabbits. Davidson looked into whether he could apply for a permit for a nature preserve from the City, but never did so because it was "not a thing for a natural area to be owned by an individual."

In 2019, Davidson received notice of violation from the City. He worked to correct the violation, and the City closed the notice. But 20 days later, workers "came

3

out to the property and, without notic[e] . . ., destroyed many valuable trees and other plants and habitat for the animals." The City then placed a lien on the property for approximately $17,000, which was more than he had paid for it.

The trial court admitted as exhibits affidavits executed by Guillermo Delcid and Maria Delcid, Davidson's neighbors, who both attested that they have never been endangered in any way by the vegetation on Davidson's property.

Reginald "Reggie" Harris, the Assistant Director of the City's Department of Neighborhoods (the Department), testified that his job duties included approving the kind of nuisance abatements that took place on Davidson's property. City inspectors would report to Harris about properties in need of abatement, and he would review and approve proposals for abatement.

Davidson's property is adjacent to several residential backyards and across the street from a church attended by families with children. Also, a lot of elderly people in the community regularly walk past the property.

Harris testified that in 2019, the Department received multiple complaints from community residents about the condition of Davidson's property, including complaints about snakes and rats along the fence line, which the residents felt posed "an immediate health danger." Harris visited the property personally because of the number of complaints the Department had received.

When asked why he considered the work done on the property to be necessary to prevent an immediate danger, Harris described the shape of Davidson's property as "unique": it was "very narrow and very, very long," like a "tunnel." Because of that shape, Harris explained, there was "a whole lot that c[ould] happen" from front to back. The front of the property was open to the street. The back of the property abutted a utility easement with power lines and an open field. The fencing on one long side was "all the neighbors' backyards," so it was "not really a full fence." Someone could "walk in and out of it." On the other long side, the neighboring business had "a large, tall privacy fence."

Harris testified that the neighboring business had "people . . . breaking in," so the business owner had gone onto Davidson's property, "cut a lane through" it and placed cameras to monitor "th[e] right-of-way between [Davidson's] property and [the business owner's] property."

Harris walked the property and found debris and weeds "well over" four feet tall. Weeds and trees on the property were overgrown against the neighbors' fences. Harris also saw evidence that rats were living on Davidson's property. Noting Davidson's testimony about creating an animal-friendly habitat, Harris explained that the same conditions that attract squirrels and birds are also good for snakes, rats, and mice.

Harris recounted that the debris found on the property included piles of rotten boards and other old building materials. In the abatement, the City workers "removed up to 30 cubic yards" of debris. According to Harris, that amount of debris can be a fire risk and a "harbor for crime."

Harris explained that criminals could hide in the high weeds on the property. He noted that the neighboring business owner had people breaking into his business. The business owner had cut holes in the fence and installed cameras to monitor Davidson's property in an effort "to keep crime down."

The trial court admitted a copy of the emergency correction notification sent to Davidson for the 2019 abatement. Harris testified that the City made multiple attempts to contact Davidson before the property reached the stage where emergency abatement was necessary. Harris stated that an emergency correction notification is sent to the property owner within 10 days of the City's emergency abatement of a property. The notification informs the property owner of an administrative appeal period during which the property owner can protest the City's action. Davidson did not pursue an administrative appeal.

The trial court rendered judgment for the City. Davidson timely requested findings of fact and conclusions of law and then timely filed a past due request for findings of fact and conclusions of law, but the trial court never entered any findings of fact or conclusions of law.

In his motion for new trial, Davidson alleged that while his case was in trial, City work crews began clearing the property again and severely damaged trees, fencing, and a drainage culvert while doing so. According to Davidson, he "was intimidated by this action" and he believed that other witnesses may also have been intimidated by it. The trial court denied Davidson's motion.

**Findings of Fact and Conclusions of Law**

In his first issue, Davidson asserts that the trial court erred in not issuing findings of fact and conclusions of law.

If a party timely requests findings of fact and conclusions of law, the trial court has a mandatory duty to file them. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). We generally presume that a trial court's failure to file findings of fact and conclusions of law when timely requested is harmful unless the record affirmatively shows that the complaining party suffered no injury. *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Alsenz v. Alsenz*, 101 S.W.3d 648, 652 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). But the presumption of harm does not apply in simple cases where the evidence presented at trial was neither lengthy nor complicated and the appellant can brief all of the relevant issues. *See Stewart & Stewarts Dev., Inc. v. Wright*, No. 01-23-00452-CV, 2025 WL 676651, at *8 (Mar. 4, 2025, no pet.) (mem. op.) (holding that appellant was not harmed by trial court's failure to make findings

of fact and conclusions of law in case with one-day bench trial where brevity of evidence presented on issue on appeal and facts and arguments in appellant's brief indicated it was able to fully brief its challenge); *Rumscheidt*, 362 S.W.3d at 665–66 (holding that appellant was not harmed by trial court's failure to make findings of fact and conclusions of law where trial was neither lengthy nor complicated and appellant did not identify any issue that he could not brief because of trial court's failure to make findings of fact and conclusions of law); *Alsenz*, 101 S.W.3d at 652 (holding that appellant was not harmed by trial court's failure to make findings of fact and conclusions of law where record reflected evidence and issues raised at trial and appellant did not appear to have had any problem presenting his case on appeal); *see also York v. Cooper-York*, No. 02-20-00356-CV, 2021 WL 2753527, at *3 (Tex. App.—Fort Worth July 1, 2021, pet. denied) (mem. op.) ( "[T]he presumption of harm does not apply to a simple case because an appellant is not faced on appeal with the task of dissecting multiple permutations of why the trial court may have ruled as it did.").

Davidson has not shown that he suffered any harm from the lack of findings of fact and conclusions of law. Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *See* TEX. R. APP. P. 44.1(a)(2). During the bench trial—which took less than three hours—the trial court heard from Davidson and one other witness and admitted 12 exhibits. Davidson complains that

because the trial court failed to make the requested findings of fact and conclusions of law, he was required on appeal to "make an exhaustive discussion of possible legal reasoning that could support the trial court's judgment." But he does not assert that the lack of findings of fact and conclusions of law prevented him from briefing any potential ground for the trial court's ruling, and Davidson's brief ably argues his position on the dispositive issue in this appeal. *See Watts v. Oliver*, 396 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Livingston v. Livingston*, 537 S.W.3d 578, 596 n.5 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (where trial court's reasons for judgment are apparent from record and appellant has thoroughly briefed his issues on appeal, lack of findings does not affect appellate court's ability to evaluate issues). Thus, we hold that Davidson was not harmed by the trial court's failure to file findings of fact and conclusions of law.

We overrule Davidson's first issue.

**Emergency Abatement**

In his second issue, Davidson argues that the City's emergency abatement of the property was unlawful because the property was not an "immediate danger" as required by Texas Health and Safety Code section 342.008(a).

Texas Health and Safety Code section 342.008 allows a municipality to "abate, without notice, weeds that: (1) have grown higher than 48 inches; and (2) are an immediate danger to the health, life, or safety of any person." TEX. HEALTH &

9

SAFETY CODE § 342.008(a). The municipality may also "assess expenses and create liens" for work performed under this section. *Id.* § 342.008(f).

Houston Code of Ordinances section 10-451 defines "nuisance" as, among other things, "[p]ermitting the existence of weeds, brush, rubbish, and all other objectionable, unsightly, and insanitary matter of whatever nature covering or partly covering the surface of any lots or parcels of real estate situated within the city." HOUS., TEX., CODE OF ORDINANCES ch. 10, art. XI, § 10-451(b)(10). Section 10-453(a) allows the City to promptly abate "the weeds, brush, rubbish, or other insanitary matter or condition constituting a nuisance . . . in a reasonable and prudent manner" and charge the property owner for the cost of the abatement. *Id.* § 10-453(a).

Section 10-453(e) (the "emergency abatement ordinance"), which the City invoked to abate Davidson's property, declares "[w]eeds or brush higher than 48 inches tall" as "an immediate danger to the health, life, or safety of all persons in the vicinity thereof, and the abatement of such weeds or brush may be carried out without prior notice . . . ." *Id.* § 10-453(e). Davidson asserts that the City improperly relied on the emergency abatement ordinance because it conflicts with state law. According to Davidson, the emergency abatement ordinance unlawfully erases section 342.008's "immediate danger" requirement by declaring that "[w]eeds or brush higher than 48 inches tall are . . . an immediate danger to the health, life, or

10

safety of all persons in the vicinity thereof," thus purporting to allow abatement without prior notice based solely on the presence of "weeds or brush over 48 inches."[1] *See id.*

The Texas Constitution prohibits home-rule municipalities, like the City,[2] from enacting any charter or ordinance that is "inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5(a). For this reason, "[a]n ordinance of a home-rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute." *City of Houston v. Bates*, 406 S.W.3d 539, 546 (Tex. 2013) (internal quotations omitted).

---

[1]    The legislature did not define "immediate danger" in section 342.008. Nor has it done so in numerous other statutes. *See, e.g.*, TEX. HEALTH & SAFETY CODE § 248.052 (allowing Department of State Health Services to issue emergency order suspending license of special care facility "if the department has reasonable cause to believe that the conduct of a license holder creates an immediate danger to the public health and safety"); *id.* § 341.019(a)(2) (municipality "may abate, without notice, a public health nuisance under Section 341.011(7)" (i.e., "a collection of water in which mosquitoes are breeding") that "is an immediate danger to the health, life, or safety of any person"); TEX. WATER CODE § 26.014 (authorizing members, employees, and agents of Texas Natural Resource Conservation Commission "to enter any public or private property" and "remove or remediate a condition related to the quality of water in the state" if "there is an immediate danger to public health or the environment").

[2]    As a home-rule municipality, the City has "the full power of self-government," and looks "to the Legislature, not for grants of power, but only for limitations" on it. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013).

Here, though, we need not decide whether the emergency abatement ordinance conflicts with section 342.008(a) because the City did not rely solely on its emergency abatement ordinance to clear Davidson's property; it also invoked the state statute. Thus, if the evidence supports findings that (1) the weeds on the property were higher than 48 inches and (2) they were "an immediate danger to the health, life, or safety of any person," then the trial court could have properly concluded that the City's emergency abatement action was valid under the statute alone. *See* TEX. HEALTH & SAFETY CODE § 342.008(a). Thus, we consider whether the evidence supports an implied finding that the condition of the property satisfied the requirements for abatement without notice under section 342.008(a).

## A. Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same force and effect as a jury verdict. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Thompson v. Smith*, 483 S.W.3d 87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.). An appellate court may review them for legal and factual sufficiency under the same standards that we apply in reviewing evidence to support a jury's answer. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Thompson*, 483 S.W.3d at 93. Absent express findings of fact and conclusions of law, we imply all necessary findings to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). If, as here, a reporter's record is part

of the appellate record, implied findings may be challenged for legal and factual sufficiency in the same way that express findings of fact or jury findings are challenged. *Id.*

In a bench trial, the trial court is the sole judge of the witnesses' credibility and it may choose to believe one witness over another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Woods v. Kenner*, 501 S.W.3d 185, 196 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We may not substitute our judgment for that of the trial court or pass on the credibility of witnesses. *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

We review a trial court's conclusions of law de novo and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Arraby Props., LLC v. Brown*, 695 S.W.3d 532, 540 (Tex. App.—Houston [1st Dist.] 2023, pet. denied).

The evidence showed that before the emergency abatement took place, the City had received multiple complaints from community residents about the condition of the property, including complaints about snakes and rats along the fence line. The neighboring business owner had also reported that he had people breaking into his business.

13

Harris testified that when he inspected the property, he found evidence that rats were living on the property and the conditions were favorable for other vermin as well. He explained that because of the shape of the property, community residents in several homes were exposed to the risk of encountering rats and snakes, and criminals could hide in the high weeds on the property. Harris added that the amount of debris on the property was a fire risk and a "harbor for crime."

Davidson notes that the trial court also had affidavits from community residents who attested that the property was not a danger, but this evidence only shows some dispute about the condition of the property. The trial court was entitled to credit Harris's testimony and reject the statements in the community residents' affidavits.[3] *See City of Keller*, 168 S.W.3d at 819.

We conclude that this evidence supports an implied finding that the property's condition posed an immediate danger to the health, life, or safety of community residents as required by Health and Safety Code section 342.008. For these reasons,

---

[3] Davidson also asserts that the emergency abatement was invalid because the City's records showed he had corrected all violations less than two weeks before the emergency abatement occurred. But any discrepancy in the City's records does not affect its authority to abate the property without notice under Health and Safety Code section 342.008(a) when the statutory conditions are met. And in any event, the trial court was entitled to credit Harris's explanation that the City closed and reopened its file on Davidson's property to meet its own internal recordkeeping requirements and not because anything had been done to remediate the property.

14

we hold that the trial court did not err in concluding that the City was entitled to abate Davidson's property without notice.

We overrule Davidson's second issue.

## Inverse Condemnation

In his third issue, Davidson argues that the trial court erred in denying his claims. In his briefing on this issue, he asserts that the City's lien on his property constitutes an unconstitutional taking.

The Texas Constitution "provid[es] a robust right to adequate compensation—and waiver of immunity—if a person's property is 'taken, damaged, or destroyed for or applied to public use . . . unless by the consent of such person.'" *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25 (Tex. 2024) (quoting TEX. CONST. art. I, § 17(a)). Thus, "[w]hen the government takes private property without first paying for it, the owner may recover damages for inverse condemnation." *Id.* at 25–26 (quoting *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004))). An inverse condemnation or "takings" claim requires a plaintiff to prove that (1) a governmental entity intentionally performed certain acts (2) that resulted in taking, damaging, or destroying the property for, or applying it to, (3) public use. *Id.* at 26. But "the government commits no taking when it abates what is, in fact, a public nuisance." *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012).

Here, Davidson does not challenge the constitutionality of section 342.008, and as we have held, the record supports a finding that the City's abatement action was valid pursuant to that statute. *See* TEX. HEALTH & SAFETY CODE § 342.008; *see also id.* § 342.004 (governing body of municipality may require property owner to keep property free from condition constituting public nuisance); *id.* § 343.011(c)(3) (defining as public nuisance as "maintaining premises in a manner that creates an unsanitary condition likely to attract or harbor mosquitoes, rodents, vermin, or other disease-carrying pests"). Nor does Davidson challenge the constitutionality of section 342.007, which permits the City to obtain a lien against the property for the expenses incurred in an abatement action. *See id.* § 342.007.

For these reasons, Davidson failed to satisfy his burden to prove his claim for inverse condemnation. Thus, we hold that the trial court did not err in denying it.

We overrule Davidson's third issue.[4]

---

[4]    In light of our disposition of these issues, we do not reach Davidson's remaining arguments. *See* TEX. R. APP. P. 47.1.

16

## Conclusion

We affirm the trial court's judgment.

Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.